Sebastiano **SANTAPAOLA**, Petitioner,

v.

John **ASHCROFT**, Attorney General of the United States, Respondent.

No. 3:02 CV 14340(GLG).

United States District Court,
D. Connecticut.

March 13, 2003.

Michael G. Moore, Law Offices of Maria De Castro Foden, Hartford, CT, for Petitioner.

William M. Brown, Jr., U.S. Attorney's Office, New Haven, CT, for Respondent.

## *OPINION*

GOETTEL, District Judge.

The sole issue presented by this petition for writ of habeas corpus **[Doc. # 1]** is whether petitioner's conviction for risk of injury to a minor under Conn. Gen.Stat. § 53–21 (1996) constitutes a conviction for a "crime of violence" or "sexual abuse of a minor," which are "aggravated felonies" under the Immigration and Nationality Act ("INA"). This appears to be an issue of first impression. Our resolution of this issue is complicated by the breadth of the statute, the significant judicial gloss placed on the statute by the Connecticut Supreme Court,[1] and the fact that the statute has been amended several times. Nevertheless, finding the statute to be divisible and after applying a categorical approach, we conclude that petitioner's conviction for

---

1. *See* Discussion at 191–192, *infra.*

risk of injury to a minor constitutes a conviction for an aggravated felony, thus rendering him subject to deportation. We, therefore, deny his petition for writ of habeas corpus and lift the stay of deportation.

## BACKGROUND

Petitioner, a citizen of Italy, emigrated to the United States in 1975. (Gov't's Ex. A.) In 1997, he pled guilty to the crimes of risk of injury to a minor under Conn. Gen.Stat. § 53–21[2] and fourth degree sexual assault under Conn. Gen.Stat. § 53a–73a.[3] He was sentenced to eight years confinement for the risk of injury conviction (execution of sentence suspended after one year with five years probation) and one year for sexual assault, his sentences to run concurrently. (Gov't's Ex. B & C.)[4]

On July 16, 1998, the Immigration and Naturalization Service ("INS") commenced removal proceedings against petitioner. The initial notice to appear charged petitioner with deportability under INA § 237(a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii), because of his conviction of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. (Gov't's Ex. D.) On August 3, 1999, additional charges of deportability were lodged against petitioner under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), based upon his conviction of an aggravated felony, as defined in INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F),[5] a crime of violence, as

---

**2.** Section 53–21, Conn. Gen.Stat. ( 1996), provides:

> *Injury or risk of injury to, or impairing morals of, children.*
> Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a–65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, shall be guilty of a class C felony.

We note that the Government has incorrectly cited the current version of this statute, which has been amended several times since 1996. The statute cited above is the version in effect at the time of petitioner's crime. Unless otherwise noted, all references in this opinion to § 53–21 are to the 1996 revision.

**3.** Section 53a–73a, Conn. Gen.Stat. (1996), provides:

> *Sexual assault in the fourth degree: Class A misdemeanor*
> (a) A person is guilty of sexual assault in the fourth degree when: (1) Such person

intentionally subjects another person to sexual contact who is (A) under fifteen years of age ...; or (2) such person subjects another person to sexual contact without such other person's consent ...

> (b) Sexual assault in the fourth degree is a class A misdemeanor or, if the victim of the offense is under sixteen years of age, a class D felony.

**4.** A transcript of the criminal hearing at which petitioner entered his plea, dated February 25, 1997, describes the factual basis for the charges against petitioner. The incident in question occurred in 1996 and involved a 12–year–old girl. Petitioner admitted to massaging her genital area externally and her breasts. He denied digital penetration. Before accepting his plea, the judge explained to petitioner that by pleading guilty, he could be deported, denied naturalization, and refused readmission into the United States. Petitioner acknowledged that he was aware of these potential consequences. (Gov't's Ex. C.)

**5.** Section 101(a)(43)(F), INA, defines "aggravated felony" as including a "crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). The term "crime of violence" is defined as

> (a) an offense than has as an element the use, attempted use, or threatened use of

defined in 18 U.S.C. § 16, for which the term of imprisonment ordered was at least one year. On February 23, 2000, a third charge of deportability was lodged based upon petitioner's conviction of an aggravated felony, as defined in INA § 101(a)(43)(A), 8 U.S.C. § 1101(a)(43)(A), a law relating to "child abuse."[6] (Gov't's Ex. E & F.)

A removal hearing was held on February 29, 2000,[7] following which the Immigration Judge ("IJ") rendered his oral decision. The IJ held that there was insufficient evidence for the court to determine that the two convictions arose other than in a single scheme of criminal misconduct and, thus, petitioner was not deportable under INA § 237(a)(2)(A)(ii), as originally charged. (Gov't's Ex. H at 3.) The IJ also found that petitioner's conviction under Conn. Gen.Stat. § 53a–73a for sexual assault in the fourth degree did not constitute a crime of violence because physical force was not a required element of that crime. (Gov't's Ex. H at 3.) With respect to petitioner's conviction for risk of injury to a minor, the IJ held that Conn. Gen.Stat. § 53–21 was a divisible statute and that "the criminal transcript clarifies that violence is, as a categorical approach, inherent; and thus, it need not be an element. *See Matter of B-*, 21 I. & N. Dec. 287 (BIA 1996)."[8] Thus, he sustained the charge of deportability on the ground that petitioner's conviction for risk of injury to a minor was a "crime of violence," which falls within the definition of "aggravated felony." Additionally, he held that it was clear from the record of conviction and particularly the criminal transcript that the violation involved a minor victim, who was twelve years old, and "[c]ertainly, sexual abuse of a minor is a form of child abuse." (Gov't's Ex. H at 4.) Therefore, he held that petitioner was deportable under INA § 237(a)(2)(A)(iii) based upon his conviction for risk of injury to a minor, an aggravated felony under both INA § 101(a)(43)(A)("sexual abuse of a minor") and INA § 101(a)(43)(F)("crime of vio-

---

physical force against the person or property of another, or

(b) any other offense that is a felony and that, *by its nature, involves a substantial risk that physical force* against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16 (emphasis added).

**6.** As the IJ noted, the third charge lodged against petitioner under INA § 237(a)(2)(A)(iii) used the phrase "child abuse," which is slightly different than the phrase set forth in INA § 101(a)(43)(A), which defines "aggravated felony" as including "murder, rape, or *sexual abuse of a minor.*" 8 U.S.C. § 1101(a)(43)(A)(emphasis added).

**7.** There had been three prior hearings which had been adjourned for various reasons.

**8.** In *In re B-*, the BIA held that second-degree rape, in violation of Md.Code Ann. § 463(a)(3), constituted a "crime of violence" under 18 U.S.C. § 16(b), based upon the statutory definition of the crime, not the circumstances underlying the alien's conviction. 21 I. & N. Dec. at 288–89. The BIA rejected the alien's argument that the crime of statutory rape, by its nature, did not involve a substantial risk of physical force but rather only a "lack of mental and emotional capacity" on the part of the victim. The BIA concurred with the holding of the Tenth Circuit in *United States v. Reyes–Castro*, 13 F.3d 377, 379 (10th Cir.1993), that "a common sense view of a sexual abuse law, in combination with the legal determination that children are generally incapable of consent, suggests that whenever an older person attempts to sexually touch a child under the age of consent, there is invariably a substantial risk that physical force will be wielded to ensure the child's compliance." *In re B-*, 21 I. & N. Dec. at 289. "The risk of violence is, indeed, 'implicit in the size, age, and authority position of the adult in dealing with a child.'" *Id.* (quoting *United States v. Wood*, 52 F.3d 272, 275 (9th Cir.), *cert. denied*, 516 U.S. 881, 116 S.Ct. 217, 133 L.Ed.2d 148 (1995)).

lence"). (Gov't's Ex. H at 3–6.) On July 23, 2002, the Board of Immigration Appeals ("BIA") affirmed the decision of the IJ without opinion. (Gov't's Ex. I.) Petitioner then filed the instant petition for a writ of habeas corpus and a stay of removal.

### STANDARD OF REVIEW

■ Although petitioner does not indicate the jurisdictional basis for his habeas petition, we assume that it is brought pursuant to the general habeas statute, 28 U.S.C. § 2241, under which we may review his deportation order to determine whether it violates the Constitution, laws, or treaties of the United States. *See INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Sol v. INS*, 274 F.3d 648, 651 (2d Cir.2001), *cert. denied*, 536 U.S. 941, 122 S.Ct. 2624, 153 L.Ed.2d 807 (2002). Our jurisdiction under § 2241, however, does not extend to reviewing factual or discretionary determinations by the BIA.

■ In ruling on this petition for habeas corpus relief, we are required to defer to the agency's interpretation of the statutes it administers when the intent of Congress is unclear and the agency's interpretation is reasonable. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Mugalli v. Ashcroft*, 258 F.3d 52, 55 (2d Cir.2001); *Sutherland v. Reno*, 228 F.3d 171, 174 (2d Cir.2000). In contrast to situations where the agency is interpreting a statute it is charged with administering, we owe no deference to the BIA's interpretation of state or federal criminal laws, because the BIA is not charged with administering those laws. *See Sutherland*, 228 F.3d at 174. Thus, we review the BIA's interpretation of state criminal statutes *de novo*. *Id.* (citing *Mi-*

*chel v. INS*, 206 F.3d 253, 262 (2d Cir. 2000)); *see also Sui v. INS*, 250 F.3d 105, 112–13 (2d Cir.2001)(holding that a court should afford deference to the BIA's interpretation, if reasonable, of the phrase "aggravated felony" set forth in the INA, but the court should review *de novo* the BIA's determination of whether the elements of a state-law conviction met that interpretation).

### DISCUSSION

An alien may be deported if, while in this country, he is convicted at any time of an aggravated felony, INA § 237(a)(2)(A)(iii). 8 U.S.C. § 1227(a)(2)(A)(iii). "Aggravated felony" is then defined in INA § 101(a)(43), which lists 21 different crimes, including (1) "a crime of violence (as defined in section 16 of Title 18 ...) for which the term of imprisonment [is] at least one year," 8 U.S.C. § 1101(a)(43)(F), and (2) "sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A). In defining "crime of violence," the INA adopts the definition set forth in the federal criminal statutes, which includes "(a) an offense that has an element the use, attempted use, or threatened use of physical force.... or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person of another ... may be used in the course of committing the offense." 18 U.S.C. § 16; *see* Note 5, *supra*. No definition of "sexual abuse of a minor," however, is set forth in the INA or adopted therein by reference. The IJ found that petitioner's conviction for risk of injury to a minor, under Conn. Gen.Stat. § 53–21,[9] constituted an aggravated felony under both of these sections.

Petitioner argues that the IJ erred as to both findings. First, he asserts, the IJ should have considered only the statute

---

**9.** In petitioner's "Sur–Response," he asserts that "[t]he subsection Petitioner was convict-

ed of has been specified by the conviction record to be 53a–21(a)(1), quoted in Respon-

itself and the elements that must be proved thereunder, not the specific actions of petitioner in the commission of the crime. In that regard, because physical force or violence is not a required element of the statutory offense of risk of injury to a minor, petitioner maintains that it does not meet the definition of a "crime of violence" under INA § 101(a)(43)(F). Second, he argues that, in determining whether the offense of risk of injury constitutes "sexual abuse of a minor" under INA § 101(a)(43)(A), the IJ used an incorrect definition of "sexual abuse of a minor," and he urges this Court to adopt the more restrictive definition set forth in the criminal code, 18 U.S.C. §§ 2242, 2243, 2246. However, even when the broader definition is applied, petitioner contends that neither the statutory elements of risk of injury nor his actions meet the requirements for "sexual abuse of a minor." Therefore, he argues, the charge of deportation based upon his conviction of an aggravated felony is in violation of the laws of the United States.

## I. Whether Risk of Injury to a Minor Under Conn. Gen.Stat. § 53–21 Is a "Crime of Violence"

■ A "crime of violence" under 18 U.S.C. § 16(b) [10] has two constituent ele-

ments: (1) that it is a felony; and (2) that the crime, "by its nature," involves a substantial risk that physical force may be used. *See Sutherland,* 228 F.3d at 175; *In re Sweetser,* 22 I. & N. Dec. 709. There is no question that the crime of risk of injury to a minor under Conn. Gen.Stat. § 53–21 is a felony. The only question is whether this statutory offense "by its nature" involves a substantial risk that physical force may be used against the person of another in the course of committing the crime.

## A. Whether a Categorical Approach Should be Applied To Determine Whether Risk of Injury Is a "Crime of Violence"

■ At the outset, petitioner argues that, in determining whether his conviction for risk of injury constitutes a "crime of violence," we are limited to a consideration of the statute itself and the elements that must be proved thereunder—not the specific actions of petitioner. (Pet'r's Reply at 1.) The Government agrees that a categorical approach should be applied to determine whether a state statute, by its nature, constitutes a crime of violence un-

dent's Exhibit L, pg 8." Exhibit L is a brief filed by the Government in the case of *Anthony Rohan Simpson v. Ashcroft,* Civ. No. 3:02CV1645(AVC), in which it appears that Simpson was convicted under subsection (a)(1) of the risk of injury statute. (The Government incorrectly cites the risk of injury statute as § 53*a*–21. The correct citation is § 53–21.) This brief has no relevance whatsoever to petitioner's conviction. We find no reference to the specific subsection of § 53–21 under which petitioner was convicted in any of the documents provided to the Court. *See* Discussion at 34–35, *infra.* Additionally, we note that petitioner could not have been convicted under subsection *(a)* (1), for at the time of his crime, Conn. Gen.Stat. § 53–21 (1996) did not contain subparts (a) and (b). *See* Note 2, *supra.*

10. Although the IJ did not cite specifically to subsection (b) of § 16, it is apparent from his reference to violence as "inherent" in the crime of risk of injury to a minor that he was relying on subsection (b). Additionally, as discussed below, the Connecticut Supreme Court has held that physical force is not a required element of the offense of risk of injury to a minor under Conn. Gen.Stat. § 53–21. *See State v. Rivera,* 260 Conn. 486, 492, 798 A.2d 958 (2002). Thus, it would not constitute a "crime of violence" under the definition in § 16(a). *See also In re Sweetser,* 22 I. & N. Dec. 709 (BIA 1999)(en banc)(holding that a conviction under Colo.Rev.Stat. § 18–6–401 for criminally negligent child abuse was not a crime of violence under 18 U.S.C. § 16(a) because physical force was not an element of that crime).

der 18 U.S.C. § 16(b), citing *Dalton v. Ashcroft*, 257 F.3d 200, 203 (2d Cir.2001). However, the Government maintains that if the state statute is divisible—in other words, if it encompasses offenses that both are and are not crimes of violence—then the Court must look beyond the statute to the record of conviction to determine whether the specific offense of which petitioner was convicted constitutes a "crime of violence." (Gov't's Mem. at 4–5.) Petitioner, however, responds that it was error for the IJ to consider the transcript of his criminal plea and asserts that this Court should not consider the plea transcript in analyzing whether a conviction for risk of injury under Conn. Gen.Stat. § 53–21 constitutes a conviction for a crime of violence. (Pet'r's Reply at 1–2.)

In *Dalton v. Ashcroft*, 257 F.3d at 203, the Second Circuit endorsed a categorical approach to determining whether a particular offense falls within the definition of "crime of violence."

> Under the language of the statute, a § 16(b) "crime of violence" is analyzed "by its nature." We believe that this language compels an analysis that is focused on the intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation. *See United States v. Velazquez–Overa*, 100 F.3d 418, 420–21 (5th Cir.1996) (citing *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)); *United States v. Aragon*, 983 F.2d 1306, 1312 (4th

Cir.1993); *United States v. Rodriguez*, 979 F.2d 138, 140–41 (8th Cir.1992). Under this approach, commonly referred to as the "categorical approach" to criminal statutory interpretation, "the singular circumstances of an individual petitioner's crimes should not be considered, and only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant[.]" *Michel v. INS*, 206 F.3d at 270 (Calabresi, J., dissenting); *see also Tapia Garcia v. INS*, 237 F.3d 1216, 1221–22 (10th Cir.2001) (citations omitted).... Based upon the language of the statute requiring analysis of the "nature" of the crime, as well as by analogy to this Circuit's law regarding moral turpitude, we believe that the categorical approach is appropriate for determining whether an offense is a crime of violence under § 16(b) in the context of deportation proceedings.

*Id.* (footnote omitted). The Court noted that this categorical approach was in accord with that of other circuits and was the "traditional method" used by the BIA to determine "whether an offense constituted a deportable crime under the INA, including an aggravated felony, and, in turn, a crime of violence under § 16(b)." *Id.* at 204–05 n. 6 (citing cases); *see also Sui v. INS*, 250 F.3d at 116–17 (endorsing this approach based on the guidance from the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)); [11] *In re Martin*, 23 I. & N.

---

11. In *Taylor*, the Supreme Court addressed the issue of whether the term "burglary" as used in a federal sentence enhancement statute should be defined in the same manner as it was defined by the state of conviction, or whether instead it should adopt a uniform definition of the crime, which might not include some offenses formally labeled "burglary" by the various states. 495 U.S. at 579–80, 110 S.Ct. 2143. The Court concluded that it was implausible that Congress intended the

meaning to depend on the definition adopted by the state of conviction since such a conclusion would mean that the same conduct could have different results for federal sentencing purposes if state labeling schemes varied. *Id.*

By analogy, the Second Circuit in *Sui* reasoned that the label given to a conviction under state law should not control the immigration consequences attached to it. 250 F.3d at 115. Instead, the Court approved the

Dec. 491, 498 (BIA 2002)(en banc)(applying the Second Circuit's categorical approach to determine if a Connecticut conviction for third-degree assault was a conviction for a crime of violence).

We agree that a categorical approach is appropriate. Applying this approach, we evaluate the "minimum criminal conduct" necessary to sustain a conviction under Conn. Gen.Stat. § 53–21 in order to determine whether the offense of risk of injury to a minor "by its nature, involves a substantial risk that physical force" may be used against the person of another. 18 U.S.C. § 16(b); *Chery v. Ashcroft*, No. 3:01CV1883(PCD), slip op. at 3 (D.Conn. May 21, 2002); *In re Sweetser*, 22 I. & N. Dec. 709 (phrasing the issue as whether the "nature of the crime—as elucidated by the generic elements of the offense—is such that its commission would ordinarily present a risk that physical force would be used against the person or property of another irrespective of whether the risk develops or the harm actually occurs"); *In re Ramos*, 23 I. & N. Dec. 336, 340 (BIA 2002)(en banc)(holding that it is the conduct required to obtain a conviction, rather than the consequences resulting from the crime, that is relevant). As the BIA stated in *In re Sweetser*, 22 I. & N. Dec. 709, "[t]he reason for this approach is clear: either a crime is violent 'by its nature' or it

is not. 18 U.S.C. § 16(b). It cannot be a crime of violence 'by its nature' in some cases, but not in others." (Internal citations omitted). Our review of the state statute in this regard is *de novo*.

**B.   Whether Conn. Gen.Stat. § 53–21 is a Divisible Statute For Purposes of Determining Whether Petitioner's Conviction for Risk of Injury is a "Crime of Violence"**

Before applying this categorical approach to Connecticut's risk of injury statute, however, we must determine whether Conn. Gen.Stat. § 53–21 is a divisible statute—in other words, whether it encompasses offenses that both are and are not "crimes of violence." *See Sutherland*, 228 F.3d at 177, n. 5; *Ramirez–Pina v. INS*, 32 Fed.Appx. 839, 841 (9th Cir.), *cert. denied*, — U.S. ——, 123 S.Ct. 296, 154 L.Ed.2d 197 (2002). If the statute is divisible into discrete subsections or parts that do and do not involve "crimes of violence," this Court then follows what has been referred to as a "modified categorical approach" in which we look to the record of conviction, including the indictment, plea, verdict, and sentence (or any other documents admissible under the federal regulations to prove a criminal conviction, *see* 8 C.F.R. § 3.41 (1995))[12] to determine whether the actual offense of which the

BIA's approach, which looked at the minimum required elements of the offense under state law to determine whether that offense fell within the federal definition of "aggravated felony." *Id*. The Court in *Sui* cautioned, however, that in making this determination a court should consider only the elements of the offense of conviction and not the factual circumstances of the crime. *Id*. at 116. Otherwise, the BIA and the courts would have to undertake the "daunting" task of looking beyond the record of conviction to determine whether the underlying facts amounted to one of the enumerated crimes constituting an "aggravated felony." *Id*. at 117–18.

12. The regulations, 8 C.F.R. § 3.41(a), entitled "Evidence of criminal conviction," lists the documents or records that are admissible in a proceeding before an IJ to prove a criminal conviction. These include:
    (1) A record of judgment and conviction;
    (2) A record of plea, verdict and sentence;
    (3) A docket entry from court records that indicates the existence of a conviction;
    (4) Minutes of a court proceeding or a transcript of a hearing that indicates the existence of a conviction;
    (5) An abstract of a record of conviction . . .;
    (6) Any document or record prepared by, or under the direction of, the court in

alien was convicted qualifies as a crime of violence. *See Ye v. INS*, 214 F.3d 1128, 1133 (9th Cir.2000); *Solorzano–Patlan v. INS*, 207 F.3d 869, 875 (7th Cir.2000); *Wadman v. INS*, 329 F.2d 812, 814 (9th Cir.1964); *see also Pichardo–Sufren*, 21 I. & N. Dec. 330, 334 (BIA 1996)(en banc).[13] The courts have emphasized that it is not what the alien did, but the crime of which he was convicted, determined by the record of conviction, that is dispositive. *Ye v. INS*, 214 F.3d at 1133 (holding that, once the statute is found to be divisible, the court must look to the charging papers and judgment of conviction to determine if the actual crime of which defendant was convicted was a crime of violence, but emphasizing that the court is not to examine the particular facts underlying the conviction); *In re Madrigal–Calvo*, 21 I. & N. Dec. 323, 326–27 (BIA 1996) (en banc)(allowing the consideration of a plea and sentencing hearing transcript as part of the record of conviction); *In re Martin*, 23 I. & N. Dec. at 493, 511 (allowing examination of the plea transcript). This determination we make *de novo*, based upon our review of the statute and the minimum conduct necessary to sustain a conviction under this statute. *See Dalton v. Ashcroft*, 257 F.3d at 203.

### 1. Two General Types of Conduct Proscribed by § 53–21

In *State v. Jason B*, 248 Conn. 543, 567–68, 729 A.2d 760, *cert. denied*, 528 U.S.

---

which the conviction was entered that indicates the existence of a conviction.

**13.** The rationale underlying this limited review was explained by the BIA in *In re Pichardo–Sufren*, 21 I. & N. Dec. at 334–36. In that case, the alien had been convicted under state law of criminal possession of a weapon in the third degree. He was charged with deportability based on his conviction for possession of a firearm under INA § 241(a)(2)(C). The BIA found the state penal statute to be divisible—it encompassed crimes which did and did not involve firearms. The only evidence of the alien's conviction that had been introduced was a certificate of disposition which failed to identify the subsection of the state penal statute under which the alien had been convicted or the weapon that he was convicted of possessing. The alien, however, admitted that he had a gun in his possession at the time of his arrest. The BIA held that it was error for the IJ, in finding the alien deportable, to rely on the alien's testimony detailing the incident underlying his weapons conviction. The BIA explained:

> [T]he principle of not looking behind a record of conviction provides this Board with the only workable approach in cases where deportability is premised on the existence of a conviction. If we were to allow evidence that is not part of the record of conviction as proof of whether an alien falls within the reach of section 241(a)(2)(C) of the Act, we essentially would be inviting the parties to present any and all evidence bearing on an alien's conduct leading to the conviction, including possibly the arresting officer's testimony or even the testimony of eyewitnesses who may have been at the scene of the crime. Such an endeavor is inconsistent both with the streamlined adjudication that a deportation hearing is intended to provide and with the settled proposition that an Immigration Judge cannot adjudicate guilt or innocence. . . .
>
> If we were to make an exception here and accept the respondent's testimony as proof of his deportability under section 241(a)(2)(C) of the Act, there would be no clear stopping point where this Board could limit the scope of seemingly dispositive but extrinsic evidence bearing on the respondent's deportability. We believe that the harm to the system induced by the consideration of such extrinsic evidence far outweighs the beneficial effect of allowing it to form the evidentiary basis of a finding of deportability.

*Id.* at 335–36. Accordingly, the BIA held that the INS's charge of deportability failed. *See also In re Teixeira*, 21 I. & N. Dec. 316, 319–20 (BIA 1996)(en banc)(holding that an IJ could not consider a police report as part of the record of conviction to determine whether an alien had committed a firearms offense, because the police report could encompass many offenses with which the alien was never charged or convicted).

967, 120 S.Ct. 406, 145 L.Ed.2d 316 (1999), the Court held that it is well settled that § 53–21 (1993)[14] "proscrib[es] two general types of behavior likely to injure physically or impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being," citing *State v. Perruccio,* 192 Conn. 154, 159, 471 A.2d 632, *appeal dismissed,* 469 U.S. 801, 105 S.Ct. 55, 83 L.Ed.2d 6 (1984). *Accord State v. Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963).[15]

### a. "Deliberate Indifference" Offenses Under The First Part of Conn. Gen.Stat. § 53–21(1)

The first part of subsection (1), proscribing conduct whereby someone "wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, and the health of such child is likely to be injured or the morals of such child are likely to be impaired," covers conduct where a defendant causes or permits a child to be placed in a dangerous situation. Conn. Gen.Stat.

§ 53–21(1)(1996). As the Connecticut Supreme Court explained,

> the first part of § 53–21 prohibits the wilful creation of a "situation" likely to impair the health of a child and thus encompasses the protection of the body as well as the safety and security of the environment in which the child exists, and for which the adult is responsible.... The plain language of the first part of § 53–21 indicates the legislature's understanding that there is a broad class of intentional conduct that can put a child's well-being seriously at risk without any physical contact by the perpetrator.

*State v. Payne,* 240 Conn. 766, 774, 695 A.2d 525 (1997) (citations omitted).

Thus, the courts have held that "a failure to act when one is under a duty to do so, thereby permitting such a dangerous situation to exist, may be sufficient to support a conviction under this statute." *State v. Dumlao,* 3 Conn.App. 607, 614, 491 A.2d 404 (1985). Illustrative cases upholding convictions under the first part of § 53–21(1) include *State v. Miranda,* 260 Conn. 93, 116–18, 794 A.2d 506 (upholding the defendant's conviction under § 53–21 where he was aware of the child's abuse by her mother and he permitted the child to

---

**14.** The version of § 53–21 in effect in 1993 and the subject of the decision in *State v. Jason B* read as follows:

Conn. Gen.Stat. § 53–21. *Injury or risk of injury to, or impairing morals of, children* Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both.

The 1993 version did not contain subsection (2), which was part of the statute in effect in

1996 at the time of petitioner's crime. *See* Note 1, *supra.* To the extent that the Connecticut Supreme Court found the 1993 version of § 53–21 to have two distinct purposes, that finding would be even more pronounced under the 1996 version, which added the second subsection involving contact with the intimate parts of a child under the age of sixteen.

**15.** *See also State v. Burton,* 258 Conn. 153, 163, 778 A.2d 955 (2001) (holding that the trial judge erred in instructing the jury on the physical endangerment portion of the statute when the defendant was charged only with the risk of injury to a child by doing an act likely to impair the morals of a child under the age of sixteen).

be subjected to additional abuse), *cert. denied*, —— U.S. ——, 123 S.Ct. 224, 154 L.Ed.2d 175 (2002); *State v. Branham*, 56 Conn.App. 395, 743 A.2d 635 (upholding the defendant's conviction for risk of injury when he left his three young children unattended in an apartment for approximately one hour), *cert. denied*, 252 Conn. 937, 747 A.2d 3 (2000); and *State v. George*, 37 Conn.App. 388, 656 A.2d 232 (1995)(upholding a conviction where the defendant left a 17–month old child unattended at home).

In those cases, often referred to as "deliberate indifference" cases, a defendant need not physically touch the child, nor is there any substantial risk that the defendant would use physical force against the child.[16] *See State v. Schriver*, 207 Conn. 456, 467, 542 A.2d 686 (1988). Thus, convictions under the "deliberate indifference" prong of § 53–21(1) would not fall within the ambit of "crimes of violence." These are not crimes that "by [their] nature, involve[ ] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b); *see also Dalton v. Ashcroft*, 257 F.3d at 207 (noting that there are many crimes of gross negligence or reckless endangerment that involve a substantial risk of injury but do not involve the use of force, such as leaving an infant alone near a pool); *In re Sweetser*, 22 I. & N. Dec. 709 (holding that an alien's conviction for criminally negligent child abuse under Colorado law for leaving a child unattended in a .bathtub did not constitute a "crime of violence"). Less clear, however, is whether a conviction under the remaining portions of Conn. Gen.Stat. § 53–21 (1996) is a conviction for a "crime of violence."

**b. "Acts Likely to Impair the Health or Morals" of a Child Under The Second Part of Conn. Gen.Stat. § 53–21(1)**

The second part of subsection (1) of Conn. Gen.Stat. § 53–21 (1996) criminalizes in very broad terms "any act likely to impair the health or morals" of a child. Faced with numerous constitutional challenges to this statute as "void for vagueness," the Connecticut Supreme Court has limited its application to acts directly perpetrated on the person of a minor, whether the impairment was physical or mental. *State v. Schriver*, 207 Conn. at 467, 542 A.2d 686.[17] The Connecticut Supreme Court, after reviewing the "extensive" and "authoritative" "judicial gloss" [18]

---

**16.** In *State v. Smith*, 73 Conn.App. 809, 813, 809 A.2d 1146 (2002), the court held that the state must prove three essential elements to sustain a conviction under § 53–21(1):(1) that the defendant's conduct was wilful or unlawful, (2) that the defendant created, acquiesced in, or was deliberately indifferent to a situation that was likely to be harmful to the victim's health or morals, and (3) that the victim was less than sixteen years old.

**17.** In *State v. Schriver*, 207 Conn. at 466, 542 A.2d 686, the Court held that defendant's grabbing the waist of a fully clothed minor while uttering sexually suggestive remarks was not the type of lewd conduct proscribed by § 53–21 (1986). The Court held that there was no significant risk of physical injury and, therefore, the conduct did not fall under the

part of § 53–21 that forbids conduct likely to injure the *health* of a minor. The Court also refused to extend § 53–21 to cover conduct that created a cognizable risk of *mental* injury to a minor victim, unless there was an act by the defendant directly perpetrated on the person of the minor. *Id.* at 467, 542 A.2d 686.

**18.** The Court in *Schriver*, held that § 53–21 failed to articulate a definite standard for determining whether the conduct of a defendant was permitted or prohibited. The Court noted that, as written, " 'any act' may violate the statute so long as it is 'likely to impair' a minor's health or morals." 207 Conn. at 462, 542 A.2d 686. The Court held that the phrase "any act," standing alone, did not provide potential violators, police officers, or juries with any guidance because no specific

placed on the meaning of "likely to impair the health and morals" of a minor, concluded that there were two types of conduct proscribed by this portion of the statute. First, the Court held that the standard set forth in *State v. Pickering,* 180 Conn. 54, 428 A.2d 322 (1980), established the governing standard for prosecutions involving the likely *moral* impairment of a minor, and that it was only when there was a deliberate touching of the private parts of a child under the age of sixteen in a sexual or indecent manner that the "morals" provision of this section would be violated. *Schriver,* 207 Conn. at 463, 465, 542 A.2d 686. Second, with respect to conduct likely to injure the *health* of a minor, the Court held that the caselaw provided "an authoritative judicial gloss that limits the type of physical harm prohibited by § 53–21 to instances of deliberate, blatant abuse." *Id.* at 466, 542 A.2d 686. Thus, the Court concluded that, as an "irreducible minimum... any prosecution under the second part of § 53–21[(1)] [requires] an act directly perpetrated on the person of a minor...." *Id.* at 467, 542 A.2d 686 (citations omitted).

Illustrative cases upholding convictions under this part of subsection (1) are *State v. Torrice,* 20 Conn.App. 75, 564 A.2d 330 (defendant's physically abusing a child), *cert. denied,* 213 Conn. 809, 568 A.2d 794 (1989); *State v. Tucker,* 50 Conn.App. 506, 718 A.2d 979 (defendant's grabbing an 11-year old, lying on top of her, while holding his hand over her mouth, during his repeated attempts to force his tongue into her mouth violated the risk of injury statute), *cert. granted in part,* 247 Conn. 928, 719 A.2d 1172 (1998), *review dismissed as*

*improvidently granted,* 248 Conn. 668, 728 A.2d 1097 (1999); *State v. McClary,* 207 Conn. 233, 234–39, 541 A.2d 96 (1988)(defendant's severely beating a two-year-old girl with a belt); and *State v. Pickering,* 180 Conn. 54, 428 A.2d 322 (1980)(holding that the deliberate touching of the private parts of a child under the age of sixteen in a sexual and indecent manner was conduct proscribed by the second prong of subsection (1)).

**c. "Contact with the Intimate Parts of a Child" Under Conn. Gen.Stat. § 53–21(2)**

Additionally, subsection (2) of Conn. Gen.Stat. § 53–21 (1996) criminalizes conduct where the defendant has contact with the intimate parts of a child under the age of sixteen in a sexual or indecent manner, likely to impair the health or morals of that child. The required elements of the crime of risk of injury to a minor under subsection (2) are: (1) that a person have contact with the intimate parts of a child or subjects a child to contact with the intimate parts of that person; (2) that the child be under the age of sixteen; (3) that the contact take place in a sexual or indecent manner; and (4) that the conduct is likely to impair the health or morals of the child. *See State v. Weiner,* 61 Conn.App. 738, 745, 767 A.2d 1220, *cert. denied,* 256 Conn. 902, 772 A.2d 600 (2001). The Connecticut Supreme Court has held that Conn. Gen.Stat. § 53–21(2)(1996) "does not contain an element of *physical* violence; nor does it require *actual* impairment of the health or moral values of a child." *State v. Rivera,* 260 Conn. at 492, 798 A.2d 958 (second emphasis in original).

---

intent was required. *Id.* The Court further observed that the focus of the statute was not "measurably narrowed" by the phrase "likely to impair," which seemed to authorize police officers and jurors to determine culpability subjectively. *Id.* Thus, rather than providing

objective certainty, the Court found that this phrase compounded the vagueness of the statute. *Id.* Accordingly, the Court turned to the judicial decisions that had upheld convictions against challenges that the statute was void for vagueness.

**2. Whether a Conviction Under The Second Prong of § 53–21(1) or § 53–21(2) Is a Conviction For a "Crime of Violence"**

■ We must now decide whether a conviction for risk of injury under the second part of Conn. Gen.Stat. § 53–21(1) or under § 53–21(2) is a conviction for a "crime of violence," as that term has been defined by 18 U.S.C. § 16(b). It is the nature of the crime, *i.e.*, whether the crime involves a substantial risk of physical force, that is critical to our decision. *See In re of B-*, 21 I. & N. Dec. at 289. "Where such a risk is present, the crime is to be considered a crime of violence for purposes of 18 U.S.C. § 16(b) without regard to whether the elements of the underlying offense include use, attempted use, or threatened use of force." *Id.*

■ We find that convictions under § 53–21(1) for acts likely to injure the *health* of a minor constitute crimes of violence. As discussed above, the Connecticut Supreme Court has held that these crimes require an act perpetrated on a minor that amounts to "deliberate, blatant abuse." *Schriver*, 207 Conn. at 466, 542 A.2d 686. We have no difficulty in holding that, such crimes, by their nature, involve a substantial likelihood that physical force against the person of the minor will be employed in the course of committing the crime.

■ Additionally, we hold that convictions under § 53–21(1) for an act likely to injure the *morals* of a minor, which require the deliberate touching of the private parts of a child in a sexual or indecent manner, *id.* at 463, 465, 542 A.2d 686, and convictions under § 53–21(2), which has similar requirements, are "crimes of violence."

Although neither section contains a requirement that physical force be employed, *see State v. Rivera*, 260 Conn. at 490, 798 A.2d 958, the Connecticut Supreme Court has treated a conviction for risk of injury under § 53–21(2), arising out of the sexual assault of child victims as violent in nature. In *Rivera*, the defendant had been charged with risk of injury to a minor and second degree sexual assault based upon his sexual assault of two of his young relatives. Noting that neither the sexual assault statute nor the risk of injury statute contains an element of physical violence, the Court held that, nevertheless, the defendant's crime was violent in nature. *Id.* at 492, 798 A.2d 958. The Court concurred with the reasoning of the United States Supreme Court, which has regarded the crime of sexual assault as violent in nature irrespective of whether it is accompanied by physical violence. *Id.* at 491, 798 A.2d 958.

"Short of homicide, [sexual assault] is the ultimate violation of self. It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist. [Although sexual assault] is very often accompanied by physical injury to the [victim] . . . [it] can also inflict mental and psychological damage."

*Rivera*, 260 Conn. at 491–92, 798 A.2d 958 (quoting *Coker v. Georgia*, 433 U.S. 584, 597–98, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977))(alterations in original).

With respect to crimes where physical force is not a required element of the offense, the courts have also focused on whether lack of consent on the part of the victim was a required element. In *Sutherland*, the Second Circuit analyzed the question of whether a conviction under Mass. Gen. Laws ch. 265, § 13H,[19] for

---

**19.** Because the statute itself did not set forth

the elements of the offense, the Court looked

indecent assault upon a person over the age of fourteen, constituted a "crime of violence" under 18 U.S.C. § 16(b). In holding that indecent assault was a crime of violence, the Second Circuit's focused on the fact that "lack of consent [was] a requisite element of a § 13H violation." *Id.* (citations omitted). The Court held that a violation of § 13H, "by its nature, presents a substantial risk that force *may* be used in order to overcome the victim's lack of consent and accomplish the indecent touching." *Id.* (original emphasis). "Because the victim's non-consent is a necessary element for conviction under Mass. Gen. Laws ch. 265, § 13H, we hold that petitioner was convicted of a 'crime of violence' within the meaning of 18 U.S.C. § 16(b)." *Id.* at 177; *see also United States v. Reyes–Castro*, 13 F.3d 377, 379 (10th Cir.1993)(holding that, because the crime of rape involved a non-consensual act, there was a substantial risk that physical force may be used in committing the offense).

Although the risk of injury statute, Conn. Gen.Stat. § 53–21, does not include a requirement of lack of consent on the part of the child victim, the statute expressly limits its application to children under the age of sixteen, which is the age

of consent in Connecticut. *See* Conn. Gen. Stat. § 53a–71; *see generally State v. Jason B*, 248 Conn. at 568, 729 A.2d 760 (in which the Connecticut Supreme Court noted that there is a "significant judicial gloss with respect to § 53–21 [1993] ... to the effect that the act of having sexual intercourse with a child under sixteen years of age was a violation of the statute regardless of whether there was consent by the child"); *State v. Plude*, 30 Conn.App. 527, 621 A.2d 1342 (holding that consent is not a defense to a violation of § 52–31), *cert. denied*, 225 Conn. 923, 625 A.2d 824 (1993). Thus, the Connecticut Legislature has made the determination, as expressed in Conn. Gen.Stat. § 53a–71, that children under the age of sixteen are not adults capable of making an intelligent choice in matters relating to sex.[20] *See State v. Jason B*, 248 Conn. at 571, 729 A.2d 760.

In analogous cases involving child victims who are incapable of giving their consent to the sexual activity involved, courts have found a substantial risk that physical force will be used against these children to ensure their compliance. *See United States v. Reyes–Castro*, 13 F.3d at 379 (holding that a conviction under Utah Code Ann. § 76–5–404.1 [21] for sexual abuse of a

to Massachusetts case law which defined the crime as "a touching that when judged by the normative standard of societal mores, is violative of social and behavioral expectations, in a manner which is fundamentally offensive to contemporary moral values and which the common sense of society would regard as immodest, immoral, and improper." *Sutherland*, 228 F.3d at 176 (internal citations and quotation marks omitted).

**20.** In prosecutions brought under § 53–21 in which the victim was legally able to consent (because the defendant was less than two years older than the victim, who was at least thirteen years of age), the Courts have read into the statute a defense of consent. Thus in *State v. Weiner*, 61 Conn.App. at 749 n. 6, 767 A.2d 1220, involving sexual contact between a

fourteen-year-old and a defendant less than two years older than the victim, the Court upheld the trial court's instruction that consent by the victim was a defense to risk of injury. *See also State v. Perruccio*, 192 Conn. 154, 165–66, 471 A.2d 632 (1984)(holding that a defendant, less than two years older than the fifteen-year-old victim, could not be convicted under § 53–21 if the victim consented to the sexual contact).

**21.** Utah Code Ann. § 76–5–404.1 (1990) provides:

A person commits sexual abuse of a child if ... the actor touches the anus, buttocks, or genitalia of any child, the breast of a female child younger than 14 years of age, or otherwise takes indecent liberties with a child,

child was a "crime of violence" under § 16(b) based upon a "common sense view of the sexual abuse statute, in combination with the legal determination that children are incapable of consent," which "suggests that when an older person attempts to sexually touch a child under the age of fourteen, there is always a substantial risk that physical force will be used to ensure the child's compliance"); *United States v. Alas–Castro*, 184 F.3d 812, 813 (8th Cir.1999)(holding that a conviction for sexual assault of a child under Neb.Rev.Stat. § 28–320.01(1) [22] was a "crime of violence" because this "type of contact between parties of differing physical and emotional maturity carries a substantial risk that physical force may be used in the course of committing the offense")(internal citations and quotation marks omitted); *United States v. Rodriguez*, 979 F.2d 138, 140–41 (8th Cir.1992)(holding that, under Iowa Code § 709.8,[23] the offense of lascivious acts with a child was a "crime of violence"

because it involved a substantial risk that physical force would be used against the child victim in the course of committing the offense); *Ramsey v. INS*, 55 F.3d 580, 583 (11th Cir.1995)(per curiam)(holding that the Florida offense of attempted lewd assault [24] on a child under the age of sixteen is a crime of violence even though the offense might be accomplished without use of physical force); *In re B-*, 21 I. & N. Dec. at 289 (holding that a Maryland conviction for second-degree rape constituted a "crime of violence" because children under the age of fourteen are generally incapable of consent and there was invariably a substantial risk that physical force would be wielded to ensure the child's compliance).

In *United States v. Velazquez–Overa*, 100 F.3d 418, 421–22 (5th Cir.1996), *cert. denied*, 520 U.S. 1133, 117 S.Ct. 1283, 137 L.Ed.2d 359 (1997), the Court considered whether the offense of indecency with a child by sexual contact, as defined by

---

or causes a child to take indecent liberties with the actor or another ... with the intent to arouse or gratify the sexual desire of any person regardless of the age of the participant.

Physical force is not a required element of his crime. *United States v. Reyes–Castro*, 13 F.3d at 379.

**22.** The Nebraska conviction at issue, sexual assault of a child, is committed if a person "subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older." "Sexual contact" is defined, in part, as the "intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts ... for the purpose of sexual arousal or gratification of either party." Neb. Rev.Stat. § 28–318 (1995). *United States v. Alas–Castro*, 184 F.3d at 813.

**23.** Iowa Code § 709.8, entitled "Lascivious acts with a child," provides in relevant part:

It is unlawful for any person eighteen years of age or older to perform any of the following acts with a child with or without the child's consent ... for the purpose of arousing or satisfying the sexual desires of either of them:

1. Fondle or touch the pubes or genitals of a child.

2. Permit or cause a child to fondle or touch the person's genitals or pubes.

3. Solicit a child to engage in a sex act.

4. Inflict pain or discomfort upon a child or permit a child to inflict pain or discomfort on the person.

**24.** Section 800.04, Fla. Stat., provides in relevant part:

A person who (1) Handles, fondles, or assaults any child under the age of 16 years in a lewd, lascivious, or indecent manner ... without committing the crime of sexual battery, commits a felony of the second degree.... Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section.

§ 21.11(a)(1) of the Texas Penal Code,[25] inherently involved a substantial risk that physical force may be used. In holding that this offense, which applied only to child victims under the age of seventeen, constituted a "crime of violence" within the meaning of § 16(b), the Court reasoned

> [w]e think it obvious that such crimes typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures. A child has very few, if any, resources to deter the use of physical force by an adult intent on touching the child. In such circumstances, there is a significant likelihood that physical force may be used to perpetrate the crime.

*Id.* at 422.

In *United States v. Wood*, 52 F.3d 272, 274–75 (9th Cir.), *cert. denied*, 516 U.S. 881, 116 S.Ct. 217, 133 L.Ed.2d 148 (1995),[26] a case involving a four-year-old victim, the Ninth Circuit explained that when an adult molests a child, "there is a serious risk of physical harm just in the very nature of the offense. Such conduct is inherently violent because the threat of violence is implicit in the size, age and authority position of the adult in dealing with such a young and helpless child." (Internal citations and quotations omitted).

Based on this well-reasoned authority, we hold that there is a substantial risk that physical force will be used against children under the age of sixteen by a defendant in the course of committing the offense of risk of injury to a minor under the latter part of subsection (1) or subsection (2). Although a violation might occur without the use of physical force against the child victim, we conclude that there is a substantial likelihood that physical force may be used in the commission of this crime. As the Court noted in *United States v. Galvan–Rodriguez*, 169 F.3d 217, 219 (5th Cir.), *cert. denied*, 528 U.S. 837, 120 S.Ct. 100, 145 L.Ed.2d 85 (1999), "when analyzing the operative phrase 'substantial risk,' it is not necessary that the risk must occur in every instance; rather a substantial risk requires a strong probability that the event, in this case the application of physical force during the commission of the crime, will occur." (Internal citations and quotation marks omitted). Accordingly, we agree with the Government that Conn. Gen.Stat. § 53–21 (1996) must be treated as a divisible statute, and that a conviction under subsection (2) of the statute or a conviction under the second part of subsec-

---

**25.** Section 21.11(a)(1) of the Texas Penal Code provides:

  (a) A person commits an offense if, with a child younger than 17 years . . . , he:
    (1) engages in sexual contact with the child;

  .     .     .     .     .

**26.** *Wood* involved the definition of "crime of violence" in the career offender provisions of the Sentencing Guidelines, U.S.S.G. § 4B1.2(1)(ii), which differs from that in 18 U.S.C. § 16(b). The touchstone of "violence" in the career offender provisions is the risk that physical injury will result, rather than the risk that physical force will be used in the commission of the crime. As the BIA noted in *In re Sweetser*, 22 I. & N. Dec. at 709, "[a]t first blush, the difference in phrasing between 18 U.S.C. § 16 and U.S.S.G. § 4B1.2(1)(ii) appears trivial because most physical injury or harm comes from the use of physical force. However, 'the use of physical force' is an act committed by a criminal defendant, while the 'risk of physical injury' is a consequence of the defendant's acts." Bearing that distinction in mind, in the context for which we rely on *Wood*, we find the reasoning of the Court to be persuasive. *See also United States v. Pierce*, 278 F.3d 282 (4th Cir.2002)(holding that the state felony offense of taking indecent liberties with a child categorically constituted a crime of violence for purposes of the career offender sentencing guidelines).

tion (1) constitutes a conviction for a "crime of violence" under 18 U.S.C. § 16(b).

We next to look to petitioner's record of conviction to determine under which portion of the statute he was convicted. *See Sutherland,* 228 F.3d at 177 n. 5; *Michel v. INS,* 206 F.3d at 265, n. 3; *In re Teixeira,* 21 I. & N. Dec. at 318; *In re Sweetser,* 22 I. & N. Dec. 709.

## C. Whether Petitioner's Conviction for Risk of Injury was a Conviction for a Crime of Violence

■ We turn to the ultimate question of whether petitioner's conviction for risk of injury under Conn. Gen.Stat. § 53–21 constitutes a conviction for a crime of violence. The difficulty we have in this case is that none of the documents in the immigration record specify whether petitioner was convicted under subsection (1) or (2) of Conn. Gen.Stat. § 53–21 (1996). The plea transcript, however, describes the factual basis for his conviction as petitioner's having touched a twelve-year-old girl's breasts and genital area externally. (Gov't's Ex. C at 4.) As discussed above, the plea transcript is considered part of the record of conviction and may be referred to when the statute is found to be divisible. When we consider the offense for which petitioner was convicted, we find that his conviction for risk of injury to a minor would fall under either subsection (2) of § 53–21, involving contact with the intimate parts of a child under the age of sixteen, or under the second part of subsection (1), involving acts likely to impair the health or morals of a child.[27] In either case, as discussed above, his conviction would have been for an offense that constitutes a crime of violence.

Petitioner relies on this Court's recent decision. in *Chery v. Ashcroft,* No. 3:01CV1883(PCD)(D.Conn. May 21, 2002)(Dorsey, J.), which involved a similar challenge to the BIA's holding that a conviction for sexual assault in the second degree under Conn. Gen.Stat. § 53a–71 constituted a crime of violence. The BIA in *Chery* held that Conn. Gen.Stat. § 53a–71, which criminalizes sexual intercourse with a victim unable to give consent, "by its nature, involves a substantial risk that physical force against the victim may be used in the course of committing the offense." Slip Op. at 2. Judge Dorsey disagreed. Applying the categorical approach required by *Dalton v. Ashcroft,* he held that the minimum conduct necessary for commission of sexual assault in the second degree was (1) sexual intercourse with (2) a member of a protected class. Noting that the statute did not did not inherently require the use of force nor did it require proof of non-consent of the victim, from which the use of force could be inferred, the Court held that the IJ and BIA had improperly injected an element of non-consent into the statute and thus improperly categorized the statute as a crime of violence. Slip Op. at 4–5.

That decision, however, did not involve a conviction for risk of injury under Conn. Gen.Stat. § 53–21, which the Connecticut courts have repeatedly held is a separate and different offense than the crime of sexual assault in the second degree. *See State v. Weiner,* 61 Conn.App. at 745, 767 A.2d 1220; *State v. Hayes,* 20 Conn.App. 737, 754, 570 A.2d 716, *cert. denied,* 215 Conn. 802, 574 A.2d 218 (1990); *State v. Apostle,* 8 Conn.App. 216, 246, 512 A.2d 947 (1986); *State v. Gibson,* 75 Conn.App.

---

**27.** While it might appear unnecessary to consider the second part of subsection (1), we note that the petitioner in *Anthony Rohan Simpson v. Ashcroft,* No. 3:02CV1645(AVC)

(Gov't's Ex. L), was convicted of risk of injury to a minor under subsection (1), as opposed to subsection (2), for having sexual contact with a child under the age of sixteen.

103, 120, 815 A.2d 172 (2003). In *State v. McCall,* 187 Conn. 73, 91, 444 A.2d 896 (1982), the Court noted that the second element under the risk of injury statute, the likely impairment of the morals or health of a child, was not a necessary corollary of sexual intercourse. Conversely, a conviction for sexual assault in the second degree under Conn. Gen.Stat. § 53a–71(a)(1) required proof of intercourse, which is only one of a multitude of acts that would suffice to prove risk of injury. Thus, the decision in *Chery* is not controlling on the issue presented by the instant case.

Accordingly, we hold that petitioner's conviction for risk of injury to a minor under Conn. Gen.Stat. § 53–21 constituted a conviction for a "crime of violence" for purposes of rendering him deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having committed an aggravated felony.[28]

## II. Whether Risk of Injury Constitutes "Sexual Abuse of a Minor"

Petitioner also contends that his conviction for risk of injury does not constitute "sexual abuse of a minor," pursuant to INA § 101(a)(43)(A), 8 U.S.C.

§ 1101(a)(43)(A). Petitioner maintains that the IJ applied the improper definition of "sexual abuse of a minor," derived from 18 U.S.C. § 3509,[29] which he characterizes as a "social welfare provision." Instead, he urges us to employ the more restrictive definition set forth in the federal criminal statutes, 18 U.S.C. §§ 2241–2246, requiring a sexual act, a component of which is sexual intercourse, which he argues did not occur here. (Pet'r's Mem. at 3–4; Pet's's Reply at 5.)

## A. What is the Proper Definition of "Sexual Abuse of a Minor"

This issue was addressed at length by the Second Circuit in its recent decision in *Mugalli v. Ashcroft,* 258 F.3d 52 (2d Cir.2001), which is binding precedent on this Court. The Court in *Mugalli* noted that the only guideline as to the meaning of "sexual abuse of a minor" set forth in the statute, INA § 101(a)(43), is that it applies to an offense whether in violation of federal or state law. 8 U.S.C. § 1101(a)(43). Because "the language of the statute yields no clear evidence of congressional intent as to the scope of the phrase," *id.,* the Court deferred to the

---

**28.** We do note that in the case of *Simpson v. Ashcroft,* No. 3:02CV1645(AVC), the Government stated in its brief (Gov't's Ex. L) that the BIA "opined" that Simpson's conviction for risk of injury under § 53–21(a)(1) for sexual contact with a minor did not constitute a second ground for removability as a "crime of violence" under 8 U.S.C. § 1101(a)(43)(F). In the BIA's opinion, Simpson's conviction did not involve conduct, which, by its nature, involved a "substantial risk of actual physical force being used in the commission of the offense." That position is clearly different than the position espoused by the Government in this case.

**29.** Section 3509 falls under Part II of the Title 18, entitled "Criminal Procedure" and is within the chapter on "Witnesses and Evidence." Entitled "Child victims' and child witnesses' rights," it defines "sexual abuse" as including "the employment, use, persua-

sion, inducement, enticement, or coercion of a child to engage in, or assist another person to engage in, *sexually explicit conduct* or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." 18 U.S.C. § 3509(a)(8)(emphasis added). "Sexually explicit conduct" is then defined in subsection (9) as including "actual or simulated -"

> (A) sexual intercourse, including sexual contact in the manner of genital-genital, oral-genital, anal-genital, or oral-anal contact ...; sexual contact means the intentional touching, either directly or through clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify sexual desire of any person; ...

18 U.S.C. § 3509(a)(9).

BIA's interpretation of this phrase as set forth in *In re Rodriguez–Rodriguez*, 22 I. & N. Dec. 991 (BIA 1999)(en banc),[30] which it found to be a reasonable interpretation. *Mugalli*, 258 F.3d at 60 (citing *Chevron* and *Michel v. INS*, 206 F.3d 253). There, the BIA adopted a broad definition of "sexual abuse," which it derived from the definition of "sexual abuse" in 18 U.S.C. § 3509(a),[31] the definition in *Black's Law Dictionary*, as well as Congress' intent expressed in the immigration laws to remove aliens who are sexually abusive toward children and to bar them from any relief. *Mugalli*, 258 F.3d at 57–58 (citing *Rodriguez–Rodriguez*, 22 I. & N. Dec. 991). The BIA concluded that § 3509(a)(8) should be used as a "guide in identifying the types of crimes [they] would consider to be sexual abuse of a minor."[32] *Rodriguez–Rodriguez*, 22 I. & N. Dec. 991. Guided by that statute, the BIA held that the crime of indecency with a child under § 21.11(a)(2) of the Texas Penal Code Annotated, which requires the perpetrator to act both with the knowledge that he is exposing himself to a child and with the intent to arouse, fell within the definition of "sexual abuse of a minor." *Id.* In so

holding, the BIA rejected the IJ's conclusion that actual contact with a minor was required for the conduct to constitute "sexual abuse." *Id.* Applying this interpretation, the Second Circuit in *Mugalli* held that petitioner's conviction for statutory rape in the third degree[33] constituted "sexual abuse of a minor." 258 F.3d at 61.

Under *Chevron*, we are bound to give deference to the BIA's interpretation of the phrase "sexual abuse of a minor," set forth in the INA, which the Second Circuit has found to be a reasonable interpretation. Thus, we reject petitioner's invitation to revisit that issue.

## B. Whether a Categorical Approach Should Be Applied To Determine Whether a Conviction for Risk of Injury Constitutes "Sexual Abuse of a Minor"

■ At this juncture, we consider *de novo* whether the minimum elements of the state-law crime of risk of injury meet the BIA's interpretation of "sexual abuse of a minor." Petitioner urges us to apply a categorical approach. The Government, on the other hand, argues that a categorical approach should not be invoked be-

---

**30.** Petitioner asserts that *In re Rodriguez–Rodriguez* has been overruled by *In re Crammond*, 23 I. & N. Dec. 9 (BIA 2001). The BIA's decision in *Crammond*, however, was subsequently vacated, *In re Crammond*, 23 I. & N. Dec. 179 (BIA 2001)(en banc), and then overruled by *IN RE SMALL*, 23 I. & N. Dec. 448 (BIA 2002)(en banc)(holding that the New York misdemeanor offense of sexual abuse of a minor constitutes an aggravated felony under INA § 101(a)(43)(A)(sexual abuse of a minor)).

**31.** In *Rodriguez–Rodriguez*, 22 I. & N. Dec. 991, the BIA found the definition in 18 U.S.C. § 2242, 2243, and 2246 "too restrictive to encompass the numerous state crimes that can be viewed as sexual abuse and the diverse types of conduct that would fit within the term as it is commonly used."

**32.** Petitioner argues that his conviction for risk of injury cannot constitute "sexual abuse of a minor" because under Rodriguez–Rodriguez, the sexual abuse is limited to sex acts performed against a minor by a parent and, in this case, there is no allegation that petitioner is the parent of the victim. (Pet'r's Mem. at 2.) The BIA did not limit its definition of "sexual abuse" to sexual acts between a parent and child. There is absolutely nothing in the *Rodriguez–Rodriguez* decision or 18 U.S.C. § 3509 to suggest such a limitation.

**33.** The statute under which Mugalli was convicted provided "[a] person is guilty of rape in the third degree when: ... [b]eing twenty-one years old or more, he or she engages in sexual intercourse with another person to whom the actor is not married less than seventeen years old." New York Penal Law § 130.25–2 (1999).

cause the definition of "sexual abuse of a minor" does not require us to look at the "nature" of the crime, as we were required to do in our "crime of violence" analysis.

Although the language of § 16(b) defining a "crime of violence" in terms of the "nature" of the crime lends further support for employing a categorical approach, neither the courts nor the BIA have limited use of a categorical approach to "crimes of violence" under § 16(b). The Second Circuit has not addressed the specific question of whether a categorical approach should be used to determine whether a conviction constitutes "sexual abuse of a minor." However, every other circuit that has examined this issue, has approved of the use of a categorical approach in this context. *See United States v. Diaz–Cortes,* 31 Fed.Appx. 534 (9th Cir.2002); *United States v. Martinez–Carillo,* 250 F.3d 1101 (7th Cir.), *cert. denied,* 534 U.S. 927, 122 S.Ct. 285, 151 L.Ed.2d 210 (2001); *Lara–Ruiz v. INS,* 241 F.3d 934 (7th Cir. 2001); *United States v. Zavala–Sustaita,* 214 F.3d 601 (5th Cir.), *cert. denied,* 531 U.S. 982, 121 S.Ct. 434, 148 L.Ed.2d 441 (2000). Further, the Second Circuit has not limited use of a categorical approach to "crimes of violence" determinations under § 16(b). For example, in *Michel v. INS,* 206 F.3d at 263, the Second Circuit approved of the BIA's use of a categorical approach to determine whether the conviction at issue was a crime involving moral turpitude. *See also United States ex rel. Guarino v. Uhl,* 107 F.2d 399, 400 (2d Cir.1939)(same); *Hamdan v. INS,* 98 F.3d 183, 187 (5th Cir.1996)(same). And, in *Sui v. INS,* 250 F.3d at 116–17, the Second Circuit endorsed the BIA's use of a categorical approach as "consistent with both precedent and sound policy" in deciding whether the alien's conviction for possession of counterfeit securities fit within the definition of "an attempt or conspiracy to commit" any of the offenses listed in the other twenty subsections of INA § 101(a)(43).

Thus, based on the reasoning of these cases, we reject the Government's argument that we should not follow a categorical approach in analyzing whether petitioner's conviction for risk of injury to a minor constitutes "sexual abuse of a minor." Additionally, we note that a categorical approach is appropriate in this context because the language of INA § 241(a)(2)(A)(iii) focuses on the nature of the conviction as grounds for deportation, rather than on the alien's conduct. *Compare* INA § 241(a)(2)(A)(iii)(an alien is deportable if he is convicted of an "aggravated felony") *with* INA § 241(a)(2)(B)(ii)(an alien is deportable if he is a "drug abuser or addict"); *see In re Teixeira,* 21 I & N Dec. at 318 (employing a categorical approach in determining whether an offense is a firearms conviction, but noting that where the grounds of deportability focuses on the person, such as the section rendering "drug abusers" subject to deportation, a categorical approach may not be appropriate).

**C. Whether § 53–21 Should be Treated As Divisible for Purposes of Determining Whether a Conviction Constitutes "Sexual Abuse of a Minor"**

■ Additionally, we find that Conn. Gen.Stat. § 53–21 should be treated as a divisible statute, encompassing some offenses that fall within the definition of "sexual abuse of a minor" and others that do not. The first part of § 53–21(1), involving the wilful creation of situations likely to impair the health of a child has no requirement of sexual abuse. *See* Discussion at 119–21, *supra.*

The second prong of subsection (1), criminalizing "any act likely to impair the health or morals" of a child under the age of sixteen encompasses conduct involving

the likely *moral* impairment of a minor, which requires a deliberate touching of the private parts of a child in a sexual or indecent manner, as well as conduct likely to injure the *health* of a minor, which is limited to instances of deliberate, blatant abuse. *Schriver,* 207 Conn. at 465–66, 542 A.2d 686. The latter category of offenses, which has included convictions for the violent shaking or severe beating of a child, *see, e.g., State v. Jones,* 34 Conn.App. 807, 644 A.2d 355, *cert. denied,* 231 Conn. 909, 648 A.2d 158 (1994); *Paulsen v. Manson,* 203 Conn. 484, 525 A.2d 1315 (1987), does not require sexual conduct of any type and would not fall within the definition of "sexual abuse of a minor" adopted by the BIA.

The other category of offenses encompassed by subsection (1), involving the impairment of the moral health of a child, requires a deliberate touching of the private parts of the child in a sexual or indecent manner. Likewise, subsection (2) of the risk of injury statute proscribes conduct that involves contact by a person with the intimate parts of a child under the age of sixteen years or subjecting a child to contact with the intimate parts of that person, in a sexual or indecent manner, likely to impair the health or morals of such child. Conn. Gen.Stat. § 53–21(2)(1996). "Intimate parts" is then defined by Conn. Gen.Stat. § 53a–65(8) as the "genital area, groin, anus, inner thighs, buttocks or breasts." We hold that such conduct falls within the BIA's definition of "sexual abuse of a minor" as set forth in *Rodriguez.* Section 3509(a)(8) includes in the definition of "sexual abuse" "the use, persuasion, inducement, enticement, or coercion of a child to engage in . . . sexually explicit conduct. . . ." "Sexually explicit conduct" is, in turn, defined to include "sexual contact," which encompasses "intentional touching, either directly or through clothing of the genitalia, anus, groin, breast, inner thigh, or buttocks of a

person with the intent to abuse, humiliate, harass, degrade or arouse or gratify sexual desire of any person." 18 U.S.C. § 3509(a)(9). *Black's Law Dictionary* defines "sexual abuse" as "illegal sex acts performed against a minor by a parent, guardian, relative, or acquaintance." *Rodriguez–Rodriguez,* 22 I & N Dec. 991 (quoting *Black's Law Dictionary* 1375 (6th ed.1990)). Contrary to the position urged by petitioner, neither the risk of injury statute nor the BIA's definition requires sexual intercourse for the offense to constitute "sexual abuse of a minor." A conviction under Conn. Gen.Stat. § 53–21 for touching the intimate parts of a child under the age of sixteen in a sexual or indecent manner, likely to impair the health or morals of that child falls within the definition of "sexual abuse of a minor," as that phrase has been interpreted by the BIA.

Our holding in this regard is consistent with that of Judge Covello in the *Simpson v. Ashcroft,* No. 3:02CV1645(AVC)(D.Conn. Dec. 27, 2002)(endorsement ruling denying the petition for writ of habeas corpus). Thus, we hold that the risk of injury to a minor statute, Conn. Gen.Stat. § 53–21, is divisible.

**D. Whether Petitioner's Conviction Constitutes "Sexual Abuse of a Minor"**

■ Finally, we must decide whether petitioner's conviction for risk of injury constitutes "sexual abuse of a minor." As before, the "record of conviction" indicates that petitioner was convicted for touching the breasts and genitalia of a twelve-year-old girl, which would fall within those portions of the statute that we have determined constitute "sexual abuse of a minor." Accordingly, we hold that petitioner's conviction for risk of injury to a minor was a conviction for an aggravated felony as defined in INA

§ 101(a)(43)(A), 8 U.S.C. § 1101(a)(43)(A), which includes "sexual abuse of a minor."

### *CONCLUSION*

For the reasons set forth above, we find that petitioner's conviction for risk of injury to a minor under Conn. Gen.Stat. § 53–21 constitutes a conviction for an aggravated felony under both the "crime of violence" and "sexual abuse of a minor" provisions of INA § 101(a)(43)(A) and (F), 8 U.S.C. § 1101(a)(43)(A) and (F). Accordingly, petitioner is subject to deportation under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). His petition for writ of habeas corpus is denied and the stay of deportation is lifted.

SO ORDERED.