## STATE OF CONNECTICUT *v.* EXEL RIVERA
## (SC 16534)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued March 19—officially released June 25, 2002

*Felix Esposito*, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Cornelius P. Kelly*, assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. The sole issue in this certified appeal is whether the Appellate Court properly upheld the trial court's order granting the state's motion to consolidate the two cases against the defendant. We conclude that the Appellate Court's conclusion was correct.

The defendant, Exel Rivera, was charged with various offenses that arose from his sexual assault of four different child victims. The charges as to one of the child victims were dismissed and, following consolidation of the remaining three cases, the state entered a nolle as to another, leaving the two cases that are the subject of this appeal. One of these cases involved an assault of the defendant's nephew; the other involved an assault of the defendant's niece. After a jury trial, the defendant was found guilty, in each case, of one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and one count of risk of injury to a child in violation of General Statutes § 53-21 (a)

(2).[1] The trial court sentenced the defendant to a total effective sentence of twenty years imprisonment, execution suspended after fifteen years, and twenty-five years probation. Thereafter, the defendant appealed from the judgment of conviction to the Appellate Court, which affirmed his conviction in a unanimous decision. *State* v. *Rivera*, 63 Conn. App. 319, 320, 75 A.2d 1006 (2001).[2]

The Appellate Court opinion aptly sets forth the facts of the case. "The first victim, E,[3] lived with the defendant from April through August, 1996. E was fifteen years old at that time. In late June, 1996, the defendant, the defendant's brother and E went to [a park]. While they were at the park, the defendant supplied E with alcohol. E and the defendant returned to the defendant's residence after midnight. The defendant then suggested

---

[1] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

Although § 53-21 has been amended since 1996 when the crimes here were first committed, the amendments are not relevant to this appeal. References to § 53-21 in this opinion are to the current revision of the statute.

General Statutes § 53a-65 (8) provides: " 'Intimate parts' means the genital area, groin, anus, inner thighs, buttocks or breasts."

[2] The defendant's two claims to the Appellate Court were that: "(1) the trial court improperly granted the state's motion to consolidate the two cases against him and (2) the prosecutor, during summation, engaged in misconduct." *State* v. *Rivera*, supra, 63 Conn. App. 320. We certified for appeal before this court only the first issue. *State* v. *Rivera*, 256 Conn. 926, 776 A.2d 1144 (2001).

[3] In accordance with General Statutes § 54-86e, the two minor victims in this case are not referred to by name, but instead are referred to by the letters E and M.

that he and E clean the basement. Once they were in the basement, the defendant told E to take his pants off and to lie down on the floor. E complied, out of fear, and the defendant sodomized him.

"In early August, 1996, E and the defendant once again consumed alcohol together. When E saw that the defendant intended to sodomize him again, E told the defendant that he did not want to do it because he was not gay. The defendant replied, 'Well, I'll just rape you.' After the defendant had begun sodomizing him, E told the defendant to stop and to get off of him. The defendant replied that he would keep doing it until E cried. After the defendant was through, E went to the bathroom and saw that he was bleeding. E moved out of the defendant's house later that same summer.

"E reported the assaults in January, 1997. He claimed that he had waited to report them because (1) he was frightened of the defendant, who told him that he had hurt people before, (2) he did not want to believe that the assaults had actually happened and (3) he feared that others might think that he was gay or blame him for what had happened.

"The second victim, M, who was thirteen years old at the time, visited the defendant's home alone on January 3, 1997. M began playing with a nine year old and a five year old child in a bedroom. The defendant entered the bedroom and, after telling the nine year old and five year old to leave the room, locked the door. The defendant then took his pants off and removed M's clothes. While holding M's hands, the defendant vaginally raped her. When he was done, the defendant left the bedroom. M locked the door in order to clothe herself. When she was dressed, M unlocked the door, and the nine year old and five year old reentered and resumed play. Because no one could drive her home

that evening, M was forced to spend the night in the defendant's home." Id., 321–22.

In a comprehensive and well reasoned opinion, the Appellate Court adequately analyzed and resolved the certified question presently before us. We would affirm on the basis of that opinion but for one paragraph, which, we conclude, while not affecting the result of the appeal, is not a correct statement of the law.

In *State* v. *Boscarino*, 204 Conn. 714, 722–25, 529 A.2d 1260 (1987), this court set forth the standards that a trial court must employ in deciding a joinder issue. "Our General Statutes and rules of practice expressly authorize a trial court to order a defendant to be tried jointly on charges arising from separate cases. General Statutes § 54-57; Practice Book § 829 [now § 41-19]. The decision of whether to order severance of cases joined for trial is within the discretion of the trial court, and the exercise of that discretion [may] not be disturbed unless it has been manifestly abused. . . . It is the defendant's burden on appeal to show that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Citations omitted; internal quotation marks omitted.) *State* v. *Boscarino*, supra, 720–21.

*Boscarino* and its progeny instruct, however, that the trial court's discretion regarding joinder is not unfettered. The determination to try a defendant jointly on charges arising from separate cases may only be reached if consistent with the defendant's right to a fair trial. In deciding whether severance is appropriate, a trial court should consider what have come to be known as the *Boscarino* factors, which include: "(1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the

defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred. . . . [S]ee *State* v. *Chance*, [236 Conn. 31, 42–43, 671 A.2d 323 (1996)]; *State* v. *Boscarino*, [supra, 204 Conn. 722–24]." (Citation omitted; internal quotation marks omitted.) *State* v. *Delgado*, 243 Conn. 523, 532–33, 707 A.2d 1 (1998); see also *State* v. *Lewis*, 60 Conn. App. 219, 226–27, 759 A.2d 518, cert. denied, 255 Conn. 906, 762 A.2d 911 (2000).

In discussing the second *Boscarino* factor in the present case, the Appellate Court stated: "On the basis of our review of the second factor . . . *actual, physical violence must be involved in the commission of the charged crime to meet the standard.* The defendant did not use physical force or violence to effectuate his assaults on the victims. He did not have to, as they were children who viewed him as an authority figure." (Emphasis added.) *State* v. *Rivera*, supra, 63 Conn. App. 324. This interpretation of the second *Boscarino* factor is unfounded.

Nowhere in our jurisprudence have we held that the second *Boscarino* factor requires that the defendant be charged with crimes involving *actual, physical* violence. The crimes charged in the present case involve the sexual assault of two of the defendant's young relatives. We agree with the reasoning of the United States Supreme Court, which has regarded the crime of sexual assault as violent in nature, irrespective of whether it is accompanied by physical violence. "Short of homicide, [sexual assault] is the *ultimate violation of self.* It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist. [Although sexual assault] is very often accompanied by physical injury to the [victim] . . . [it] can also inflict *mental*

*and psychological* damage." (Emphasis added; internal quotation marks omitted.) *Coker* v. *Georgia,* 433 U.S. 584, 597–98, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977). In reference to sexual assault in another context, we have stated: "It does not matter that the sexual assault was unaccompanied by serious physical injury. A sexual assault [by an older, trusted relative] causes obvious psychological and emotional injuries. Such injuries often far exceed physical injuries in duration and in their impact on the victim's life." *State* v. *Horne,* 215 Conn. 538, 549–50, 577 A.2d 694 (1990). In our opinion, it is beyond dispute that a sexual assault by an older, trusted relative results in psychological and emotional injuries to the victim and that such an act reasonably could be construed to be violent in nature, for purposes of a *Boscarino* analysis.

The emotional and psychological damage, long recognized as one of the most insidious features of sexual assault, may be particularly heinous when the victim is a child. The legislature has indicated as much by its enactment of § 53a-71 (a) (1), which focuses on the child victim and which conspicuously omits the requirement of any physical violence as an element of the crime. Similarly, § 53-21 (a) (2) does not contain an element of physical violence; nor does it require *actual* impairment of the health or moral values of a child.

In the present case, the trial court properly applied the *Boscarino* factors and concluded, in its discretion, that none of them mandated severance. Specifically, the trial court notably *did not require,* as a part of the second factor, actual physical violence, as did the Appellate Court. Indeed, the trial court reasoned that, because the cases did not appear to involve brutal or shocking conduct, the jury could consider each of the two cases separately and dispassionately. Further, the trial court stated that it intended to give the jury specific cautionary instructions that would ensure that "the jury

knows that these are separate complainants, separate counts, and that they should make separate decisions."[4]

"It is the defendant's burden on appeal to show that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Internal quotation marks omitted.) *State* v. *Boscarino,* supra, 204 Conn. 721. Although we might disagree with the trial court's conclusion that the two cases were not brutal or shocking, we cannot say, as a reviewing court, that the trial court's conclusion, coupled with proper and adequate jury instructions, constituted an abuse of discretion. In sum, we conclude that, notwithstanding its improper reading of the second *Boscarino* factor, the Appellate Court properly found that the trial court's instructions more than adequately guided the jury to its proper consideration of these cases as two separate matters, and that the defendant was not prejudiced by the joinder of the two cases.[5]

[4] In accordance with its stated intention, the trial court instructed the jury that it should consider separately the charges against the defendant.

As part of its preliminary instructions, the trial court stated: "Each charge against the defendant is set forth in—in a separate offense or count, and each charge must be considered separately by you in deciding the guilt or innocence of the defendant.

\* \* \*

"On the other hand, if you are satisfied that the evidence establishes the guilt of the defendant beyond a reasonable doubt, you should not hesitate to find him guilty. *Separate decision on each count, as I said before.*" (Emphasis added.)

In its charge to the jury after the taking of evidence, the trial court stated: "You must render a separate verdict as to each of the counts of the information."

Further, when the trial court instructed on the elements of each offense charged, the court carefully specified which count related to which victim and emphasized that each count must be considered individually.

[5] We also note that the *state* emphasized in its closing argument that the cases were distinct and had to be considered separately. The prosecutor stated: "The court is going to instruct you on the information as was pointed out . . . that this is an information where it alleges complaints brought by [M] and [E]. These are two separate cases. Your decisions in this case and you[r] verdicts in this case are separate. There's no doubt there has been

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

much testimony in this case that carries over from one to the other and that, in fact, affects the credibility of many people, but your decisions in this case are separate and distinct from one another. Please keep that in mind."