STATE OF CONNECTICUT *v.* ANTHONY J.
SANTANIELLO, JR.
(AC 25343)

Flynn, C. J., and DiPentima and Mihalakos, Js.

Argued May 2—officially released July 25, 2006

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's

attorney, and *Michael A. Gailor*, executive assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Anthony J. Santaniello, Jr., appeals from the judgments of conviction, rendered following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, inciting injury to another person in violation of General Statutes § 53a-179a (a) and intimidating a witness in violation of General Statutes § 53a-151a (a) (1).[1] The trial court sentenced the defendant to a total effective term of forty-two years imprisonment. On appeal, the defendant claims that the court improperly (1) abused its discretion in joining and refusing to sever two separate informations, (2) denied the defendant's motion to suppress, (3) failed to conduct an in camera review of documents and (4) refused to consider the defendant's postverdict letter requesting a new trial.

We conclude that (1) there was no substantial injustice in the joinder of the informations in a single trial, (2) the court properly denied the motion to suppress the defendant's statements because there was adequate evidence from which it could have found that the defendant implicitly waived his right to remain silent, (3) the court was not obligated to review documents and prison records in camera because defense counsel agreed on the record that it was unnecessary and (4) defense counsel unequivocally stated that he was withdrawing his petition for a new trial and would be refiling the

---

[1] The jury found the defendant not guilty of a second count of sexual assault in the first degree in violation of § 53a-70 (a) (1) and burglary in the first degree in violation of General Statutes § 53a-101 (a) (1).

petition separately as a civil matter. Accordingly, we affirm the judgments of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of this appeal. The defendant and the victim[2] were acquaintances. The victim lived in a single-family dwelling with her daughter and a female friend, S. On January 12, 2002, the defendant and the victim spent part of the day together, and the victim told the defendant that she planned to go to a local pub in the evening. The victim went to the pub at approximately 9 p.m., where she met several friends including the defendant and S. They remained at the pub until it closed at approximately 2 a.m. Thereafter, the victim returned to her apartment alone, where she left the door unlocked in case S returned later, and she went to bed. She spoke with the defendant, via the telephone, during the night.

Some time thereafter, the defendant appeared in the victim's bedroom. He sat on her bed and proceeded to make advances toward her. The victim repeatedly told the defendant to stop, but he became forceful and overcame the victim, removing her sweatpants, tearing her panties and sexually assaulting her. The victim was left bruised and had a rope like burn on her hip where her panties had been torn from her.

When S returned home later that afternoon, she knew that something was wrong with the victim. When S questioned the victim, the victim became emotional and "lost it." She then told S what had happened. S urged the victim to telephone the police, but the victim did not want to report the incident because she was afraid of the defendant. S, however, continued to urge the victim to report the incident, and four days later, the

---

[2] In accordance with General Statutes § 54-86e and our policy of protecting the privacy interests of victims of sexual assault, we decline to identify the victim or others through whom the victim's identity may be ascertained.

victim filed a complaint with the Enfield police. A forensic examination of the victim's panties revealed a stain that contained the defendant's DNA. The defendant was arrested on February 22, 2002. In an amended long form information, the defendant was charged with two counts of sexual assault in the first degree, burglary in the first degree and kidnapping in the first degree (sexual assault case).

Following the defendant's arrest, he was incarcerated at the Cheshire Correctional Institute, where he shared a cell with Thomas Marra from May 13 until July 30, 2002. In August, 2002, Marra contacted George Nobile, an inspector with the division of criminal justice, informing Nobile that he had a cell mate who wanted to have a witness killed. Nobile and a supervisor, Gregory Dillon, met with Marra on September 4, 2002, and Marra informed them that the defendant wanted to have the victim killed so that she could not testify against him. Marra provided a letter written by the defendant and explained the code words used in the letter. Subsequently, Marra also provided Nobile and Dillon with further correspondence from and to the defendant concerning the defendant's desire to have the victim killed.

On October 9, 2002, Marra telephoned the defendant and told him he could put the defendant in contact with an assassin. Nobile then assumed the undercover role of the assassin and contacted the defendant on October 14 and 18, 2002. Nobile set up a meeting with the defendant for the morning of October 21, 2002, but the defendant did not appear for that meeting.

The defendant was arrested on October 25, 2002, and was held at the Bridgeport Correctional Center, where he shared a cell with Andre Holeman. The defendant told Holeman that he was facing sexual assault charges and that he had wanted the victim killed so that she could not testify against him. He also told Holeman

about Marra and his arranging a meeting with an assassin. He further explained to Holeman that he was supposed to pay the assassin $7500 to kill the victim but that he did not have the funds and, therefore, was considering killing the victim himself. The defendant also asked Holeman to telephone the defendant's attorney to report that the defendant had been set up by Marra. In an amended long form information, the defendant was charged with attempt to commit murder, inciting injury to another person and intimidating a witness (attempted murder case).

After a consolidated trial, the jury found the defendant guilty of sexual assault in the first degree, kidnapping in the first degree, attempt to commit murder, inciting injury to another person and intimidating a witness. This appeal followed.

I

The defendant first claims that the court abused its discretion in joining, and refusing to sever, two separate informations—the sexual assault case and the attempted murder case. Specifically, the defendant argues that "the trial court erred in assessing the factors under [*State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987) and *State* v. *Ellis*, 270 Conn. 337, 375, 852 A.2d 676 (2004)]." He contends that "[t]he sexual assault charge could be, and should have been, adjudicated in a separate trial without involving evidence of the attempted murder. Both crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part. The intertwining of the evidence of the attempted murder with the sexual assault case added to the duration of the trial and unduly complicated that case resulting in substantial prejudice to the defendant. Furthermore, that prejudice was not cured by any of the court's instructions to the jury." We do not agree.

Our Supreme Court, in *State* v. *Boscarino*, supra, 204 Conn. 722–24, "set forth the standards that a trial court must employ in deciding a joinder issue. . . . The decision of whether to order severance of cases joined for trial is within the discretion of the trial court, and the exercise of that discretion [should] not be disturbed unless it has been manifestly abused. . . . It is the defendant's burden on appeal to show that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions. . . . In deciding whether severance is appropriate, a trial court should consider what have come to be known as the *Boscarino* factors . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Rivera*, 260 Conn. 486, 490, 798 A.2d 958 (2002). "These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *Cassidy*, 236 Conn. 112, 133, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996), overruled in part on other grounds by *State* v. *Alexander*, 254 Conn. 290, 296, 755 A.2d 868 (2000); see *State* v. *Chance*, 236 Conn. 31, 42–43, 671 A.2d 323 (1996); *State* v. *Boscarino*, supra, 722–24.

General Statutes § 54-57 provides: "Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise." See also Practice Book § 41-19 ("[t]he judicial authority may . . . order that two or more informations . . . be

tried together"). "In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Citations omitted; internal quotation marks omitted.) *State* v. *Herring*, 210 Conn. 78, 94–95, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). "Where evidence of one incident can be admitted at the trial of [another incident], separate trials would provide the defendant no significant benefit. It is clear that, under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial." (Internal quotation marks omitted.) *State* v. *Marsala*, 43 Conn. App. 527, 533, 684 A.2d 1199 (1996), cert. denied, 239 Conn. 957, 688 A.2d 329 (1997).

In this case, although we tend to agree with the state's contention that evidence relating to the charges set forth in each information likely would have been admissible in separate trials to prove motive and consciousness of guilt, we need not decide the issue of cross admissibility because we conclude that the trial court properly considered the *Boscarino* factors when it allowed the informations to be joined for trial, and the defendant has not met his heavy burden of demonstrating that joinder of the two informations resulted in substantial injustice. See *State* v. *Delgado*, 243 Conn. 523, 536 n.14, 707 A.2d 1 (1998) (where appellate court concludes that defendant has not met burden of showing joinder resulted in substantial injustice, it need not decide whether evidence of one charge would be cross admissible at separate trials).

The following additional facts are relevant to our analysis of this claim. The defendant filed a motion to

sever the sexual assault and the attempted murder cases for trial, and the state filed a motion for joinder of these cases. The court, on December 16, 2003, heard argument on these motions. The state argued that the cases should be consolidated for trial because evidence from each case would be admissible in the other case. Defense counsel argued that consolidation would have a negative impact on his entrapment defense, but he agreed that it was a fair statement that the evidence in each case was cross admissible in the other case. He also argued that it would be exceedingly prejudicial to the defendant to allow the state "to introduce evidence of the attempted murder first and then [to introduce] evidence of the sexual assault . . . ." After hearing the defense argument, the court stated that it would seem fair for the state to introduce the sexual assault case before the attempted murder case; the state agreed and stated that it intended to proceed in that manner. The court then stated that it had a few more questions for defense counsel before making its ruling. It proceeded with the following:

"The Court: . . . Is it your argument that the defendant might wish to testify as to one offense but not another . . . ?

"[Defense Counsel]: No, Your Honor.

"The Court: . . . [A]re you claiming that the defenses that might be raised in any way are inconsistent?

"[Defense Counsel]: No. The defenses would not be inconsistent.

"The Court: All right. So, there's nothing inherently troubling you about that?

"[Defense Counsel]: No.

"The Court: Are you claiming that the length of the trial would be substantially affected by trying these together?

"[Defense Counsel]: We are not, Your Honor.

"The Court: And I ask that because the issue of judicial economy is a central issue. And so your fundamental argument is that there would be a negative cumulative impact by trying these together?

"[Defense Counsel]: Correct, Your Honor."

Shortly thereafter, the court granted the state's motion for joinder but assured defense counsel that it would tell the jury that "at every appropriate opportunity" each count is separate and must be evaluated separately. Defense counsel later renewed his motion to sever, and, on January 5, 2004, the court heard argument on this motion. The court then directed both defense counsel and the state to provide it with "a brief cautionary instruction on these issues." The court explained that that it wanted the lawyers to have direct input into the cautionary instruction regarding the separate informations and that "during the trial itself, [it] would be [the court's] intention to give a cautionary instruction if certain things are admitted, and then during the closing instructions [the court] would give it again." The court also explained that, although defense counsel had some good arguments for severance of the case, the arguments fell short. The court, nevertheless, stated that it was concerned about any adverse impact that consolidation might have on the defendant. Therefore, it directed that it was "going to look to [defense counsel] throughout the trial for cautionary instructions or assistance in . . . directing the jury to be very clear that it must decide . . . each count independently and . . . consistent with [the court's] instructions on the law, including the rules of evidence." We have reviewed the record and are unable to find anything that would

indicate that counsel did, in fact, provide the court with the cautionary instructions that the court had requested to assist in directing the jury.

The following day, during its opening remarks to the jury, the court instructed that this case consisted of "two different matters that are consolidated for trial." The court stated that each case had its own information, with a separate docket number, and that the informations were not evidence but merely were charging documents. Following completion of the court's opening remarks, the state presented its evidence to the jury, first presenting the evidence on the sexual assault case, then proceeding to the evidence on the attempted murder case, as had been requested by defense counsel.

On January 13, 2004, the court presented its proposed final charge to counsel. Before the start of closing argument the next day, the court stated for the record that it had spent most of January 13, 2003, with counsel talking about the proposed jury charge. It stated that the court and counsel had gone "through it word by word, page by page . . . . And just by way of summary . . . there [had been] substantial agreement about the language of the charge." Neither defense counsel nor the state presented any objection to the proposed charge on the record.

In determining whether the court abused its discretion in consolidating these informations for trial, the defendant bears the burden on appeal to prove a substantial injustice and that any resulting prejudice was not cured by the court's instructions. See *State* v. *Rivera,* supra, 260 Conn. 490. We conclude that the defendant has not met his burden.

First, the informations in this case involved discrete, easily distinguishable factual scenarios. The crimes alleged in each information occurred at different times, on different dates and at different locations. And,

although they both involved the same victim, the factual scenarios clearly were distinguishable.

Second, the crimes charged in each information were not so brutal or shocking that they would inflame the passions of the jury. Although this case involved informations charging such crimes as sexual assault and attempted murder, the victim was not a child, and the details of these crimes were not so brutal and shocking as to impair the jury's ability to consider the charges set forth in the informations in a fair manner. Compare *State* v. *Ellis*, supra, 270 Conn. 378 (abuse of discretion when court joined three sexual assault cases where defendant's abuse of one child victim substantially more egregious and shocking than his abuse of other two child victims) with *State* v. *Howard*, 88 Conn. App. 404, 420–21, 870 A.2d 8 (upholding joinder of information charging narcotics violation to information charging murder and weapons violations), cert. denied, 275 Conn. 917, 883 A.2d 1250 (2005).

Third, defense counsel specifically told the court that he was not claiming that the trial would be lengthy if these informations were consolidated. Additionally, we note that the state presented its evidence over a five day period, and the defendant elected not to put on a case. The state, as it had agreed, presented its evidence in an orderly, chronological fashion, presenting the evidence relating to the sexual assault case before proceeding to the evidence relating to the attempted murder case. The trial was neither long nor complex.

Having applied the *Boscarino* factors, we are satisfied that the trial court did not abuse its discretion in granting the state's motion for joinder. Furthermore, even if we were to conclude that one of the *Boscarino* factors was present, the court's detailed instructions to the jury cured any prejudice that might have occurred. See *State* v. *Cassidy*, supra, 236 Conn. 133 (reviewing

court must decide whether court's instructions cured prejudice).

In addition to the initial instructions that the court gave the jury, which we already have set forth, the court painstakingly went through all of the evidence, explaining to the jury for what purposes each bit of evidence or testimony could be considered in relation to the individual informations and explaining to the jury that the evidence could not be considered for any other purpose. In addition, the court instructed the jury that each count was a separate offense and, therefore, that the jury was required to consider each count individually.[3]

---

[3] The court gave detailed final instructions, stating, inter alia: "The defendant is entitled to have you separately evaluate the evidence on each count and separately determine if the state has met its burden of proof, proof beyond a reasonable doubt on each charge. . . . The fact that the charges in the informations have been consolidated for trial is not evidence and may not be held against [the defendant]. . . . Now, in this case, the defendant, as you know, has been charged in two separate criminal informations, which have been consolidated for trial. In the information in the first case . . . the defendant is charged with two counts of sexual assault in the first degree, one count of burglary in the first degree and one count of kidnapping in the first degree. In the information in the second case . . . [the defendant] is charged with one count each of attempt to commit murder, inciting injury to another person and intimidating a witness. You will have copies of the informations with you during the deliberations. . . . So, you'll have the informations with you. The first docket number is 122734, that's the sexual assault and related charges. The second docket number is CR02-125860, that charges attempt to commit murder and related charges. You must separately consider and deliberate upon all of the charges and attempt to reach a verdict on every one of them."

Additionally, in discussing the evidence, the court went on to instruct: "Various letters were also admitted into evidence. State's exhibits twelve, thirteen and nineteen were admitted as substantive evidence in connection with the charges in docket number CR02-125860, attempt to commit murder and related charges. And also for consciousness of guilt purposes only with respect to the charges in docket number CR02-122734, sexual assault in the first degree and related charges. You may not consider them for any other purposes in docket number CR02-122734." The court continued: "Now, state's exhibit fourteen, another letter, was admitted for all purposes with respect to both docket numbers. Another letter, state's exhibit twenty-two, plus the attached envelope, were admitted only in connection with the

Following the entire charge, defense counsel had one exception related to the court's use of the phrase "any one of the elements" rather than "all of the elements," which the court agreed to change on the jury's copy of the charge and to notify the jury of the change. Additionally, both defense counsel and the state then stipulated for the record that Marra became a person cooperating with the government for purposes of this case on September 4, 2002.

Despite the court's previous invitation and request that counsel provide some cautionary instructions to help guide the jury, the defendant never provided them. Further, the defendant failed to request any additional cautionary instruction regarding the separate nature of the informations or the evidence. Furthermore, the defendant took no exception on this ground to the charge as given by the court.

charges in docket number CR02-125860, that's the attempt to commit murder and related charges. You heard testimony by Inspector Gregory Dillon concerning statements alleged to have been made on October 25, 2002, by the defendant when [he was] arrested. These statements are admissible only insofar as they relate to the charges in docket number CR-02-125860, which is the attempt to commit murder and related charges information. You may not consider these statements for any other purpose.

"Also state's exhibit eleven, the notice of rights form, is admitted only insofar as it relates to the charges in docket number CR02-125860, attempt to commit murder and related charges. You may not consider it for any other purpose. . . . Next, you've heard a tape recording, state's exhibit fifteen, in which the defendant made certain statements. These statements are admissible only with respect to the charges of attempt to commit murder and related charges in the second docket number, CR02-125860. You may not consider them for any other purpose whatsoever."

The court went on to explain in detail the charges and the elements of each offense contained in the sexual assault information. It then went on to discuss in detail the charges and the elements of each offense contained in the attempted murder information, stressing that this was a separate information. The court explained the defense of renunciation and that it related only to the attempt to commit murder charge. It also explained the defense of entrapment and that it related to all charges contained in the attempt to commit murder information but that it did not relate to the charges contained in the sexual assault information.

We conclude, therefore, that the defendant has failed to meet his heavy burden of demonstrating that joinder of the sexual assault information and the attempted murder information resulted in substantial injustice.

## II

The defendant next claims that the court improperly denied his motion to suppress statements that he had made while in police custody on the second information concerning the attempted murder case. He argues that "the statements were made without a valid waiver of his rights under *Miranda* v. *Arizona,* 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)." The state responds that the defendant was aware of his right to remain silent but chose to speak with the police. Further, the state argues that "[a] scrupulous examination of the record reveals that the trial court's finding of a waiver is supported by substantial evidence." We agree with the state.

"[The] standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [review is plenary, and the reviewing court] must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Pierre,* 277 Conn. 42, 92, 890 A.2d 474 (2006).

The defendant was arrested in relation to the attempted murder charge and was advised of his *Miranda* rights. The defendant stated that he understood those rights, and he signed a notice of rights advisement form. After being booked on the charges related to the attempted murder, Inspector Dillon

showed the defendant the advisement form that the defendant had signed, and the defendant acknowledged that he had been advised of his rights. Thereafter, Dillon questioned the defendant, who freely answered Dillon's questions. During questioning, the defendant, inter alia, denied having seen the victim for eight months. After Dillon informed the defendant that the authorities had intercepted communications between the defendant and another inmate, the defendant requested an attorney, and Dillon immediately terminated the interview.

The defendant argues that although he signed the notice of rights advisement form, he never signed a waiver of rights form and that, therefore, there was a presumption that he did not waive his rights. He further argues that the state never met its burden of rebutting that presumption. We do not agree.

"To be valid, a waiver must be voluntary, knowing and intelligent. . . . The state has the burden of proving by a preponderance of the evidence that the defendant voluntarily, knowingly and intelligently waived his *Miranda* rights. . . . Whether a purported waiver satisfies those requirements is a question of fact that depends on the circumstances of the particular case." (Citations omitted; internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 50, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).

"Whether the defendant has knowingly and intelligently waived his rights under *Miranda* depends in part on the competency of the defendant, or, in other words, on his ability to understand and act upon his constitutional rights. . . . Factors [that] may be considered by the trial court in determining whether an individual had the capacity to understand the warnings include the defendant's experience with the police and familiarity

with the warnings . . . his level of intelligence, including his IQ . . . his age . . . his level of education . . . his vocabulary and ability to read and write in the language in which the warnings were given . . . intoxication . . . his emotional state . . . and the existence of any mental disease, disorder or retardation." (Internal quotation marks omitted.) Id., 51. "Although the issue [of whether there has been a knowing and voluntary waiver] is . . . ultimately factual, our usual deference to fact-finding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence." *State* v. *Harris*, 188 Conn. 574, 580, 452 A.2d 634 (1982), cert. denied, 460 U.S. 1089, 103 S. Ct. 1785, 76 L. Ed. 2d 354 (1983).

In denying the defendant's motion to suppress, the court made extensive findings. It found that the defendant had considerable experience with the criminal justice system and that he was familiar with the process. It found that the defendant was a high school graduate who understood English very well and that he was not coerced or forced to speak to the police. The court found that the defendant was advised of his rights and that he signed the notice of rights form, which specifically advised the defendant that he had a right to remain silent. The court further found that the defendant knew "that any statements made [could] be used against him" and that the defendant's "knowledge of all of these [*Miranda*] rights [was] very clear on the record in light of this form, his testimony, and his past experience." Additionally, the court found that the evidence indicated that the defendant fully possessed all of his faculties and understood what he was doing. Finally, the court concluded that "the state [had] met its burden of showing by a preponderance of the evidence that the

defendant knowingly and intelligently waived his constitutional right to remain silent." The court stated that this conclusion was made on the basis of "all the evidence, including [the defendant's] own testimony and all the witnesses' testimony . . . ." The court further concluded that "the waiver of . . . rights was . . . implicitly made by [the defendant's] conduct, with a full awareness of the nature of what he was doing, of the rights being abandoned and [of] the consequences of abandoning these rights."

On appeal, the defendant does not claim that the findings of the court were clearly erroneous. Rather, he claims that the state did not rebut the presumption that he did not waive his rights and that the court failed to presume that the defendant did not waive his rights. The court made numerous findings on the record concerning the defendant's competence to effectuate a valid waiver, and it specifically found that the state had met its burden by a preponderance of the evidence. Clearly, then, the court honored the presumption of nonwaiver by the defendant because it made a specific finding that the state had met its burden of proving that the defendant did waive those rights by a preponderance of the evidence.

On the basis of the specific findings and conclusions set forth by the court as outlined previously, we conclude that the court properly denied the defendant's motion to suppress.

## III

The defendant next claims that the court improperly failed to conduct an in camera review of documents and improperly denied his January 2, 2004 motion to suppress statements that he had made to Marra in violation of the defendant's rights. The state argues that this claim has no merit because the parties agreed to the procedures implemented in response to these issues,

and the defendant did not renew his request for production of documents or his motion to suppress or otherwise object. We agree with the state.

The following additional facts are relevant to this issue. On July 29, 2003, the defendant filed a "request for discovery and production," in which he requested that the state produce exculpatory information, books, papers or documents that the state intended to offer into evidence or which might be helpful to the defense, copies of the defendant's criminal record, reports of experts, warrants related to the defendant, written or oral statements made by the defendant, statements of coconspirators, names and addresses of all witnesses, statements of witnesses, felony or misdemeanor convictions of witnesses and any other relevant material and information.[4]

During jury voir dire on December 18, 2003, a discussion ensued related to the production of documents in which both defense counsel and the state initially agreed that the court should conduct an in camera review of Marra's department of correction file. The court then stated that it wanted the state to review the file first and to discuss the procedure with defense counsel. The court explained that the state had a duty to conduct the initial review of these documents. The state agreed, and defense counsel then told the court that he would "indicate to the [c]ourt what it is in the file that would be of material benefit to the defense were it included in the file." Defense counsel explained that he wanted the file reviewed for information that would benefit the defendant's entrapment defense and for information indicating that Marra was an operative informant of the state on an ongoing basis. The court

---

[4] We note that the defendant has failed to provide a copy of this request for production in the appellate record. Nevertheless, there is a copy contained in the appellate clerk's file.

then, specifically to protect the record, told defense counsel that he should make a precise written request as soon as possible as to what materials he believed might be in the state's possession and why they should be disclosed, to which defense counsel responded: "Certainly." The court continued: "I think that would be a good idea because in the event of an appeal, then there is no misunderstanding, no mistake. If you want something for truthfulness, something to establish the nature and extent of any relationship with the state, agency relationship now or ever, character evidence, whatever you want. Just put it in writing so the state knows what you want and so if I get involved in reviewing the materials, I can be aware of them." Defense counsel then thanked the court and agreed that he would put his request in writing sooner rather than later.

On January 2, 2004, the defendant filed a "motion for disclosure of records of inmate/government agent," in which he stated that he intended to offer a defense of entrapment[5] and that "Marra's records from the department of correction and other sources concerning his status as an agent of the government [were] material to the defense." The defendant specifically requested in the motion that the "court . . . inspect, in camera, all state, local and federal records or documents concerning . . . Marra's participation in law enforcement investigations in which consideration was sought, promised or paid." On January 2, 2004, the defendant also filed a motion to suppress "any written or oral statements allegedly made by him after the initial contact with the agent of the government [Marra]."

[5] Defense counsel explained to the court during the January 14, 2004 hearing, however, that he would not be arguing a defense of entrapment to the jury but that he, nevertheless, wanted the court to charge on this defense, which the court did.

On January 5, 2004, during oral argument on these motions,[6] the court asked if defense counsel still wanted the court to review the department of correction documents in camera to assess whether there was "a continuing relationship such that . . . any statements made at any times [would not be] admissible for any purpose." Defense counsel responded: "That's right." The court stated that it wanted to hear further argument on these motions later in the day, and it then would determine if it needed to conduct an in camera review of documents. Later that day, defense counsel agreed that the reason he was seeking disclosure and the court's review of these documents "pertain[ed] to a claim that Marra at some point became an agent of the government and the statements ought to be suppressed . . . ." The court, again, explained that it was the duty of state to review these documents first. Defense counsel expressly stated that the court was correct. He then stated: "I think . . . [the prosecutor] as an officer of the court would probably disclose to me if there were *Giglio* or *Brady*[7] material in the records anyway. . . . So, I don't have any concern that [the prosecutor] go through the records rather than have . . . an in camera inspection at the outset. I would agree that [the prosecutor] should have an opportunity to do that." Following a recess, the court explained for the record that it had spoken to both counsel in chambers concerning, among other things, these motions, and the court suggested that the prosecutor review the records for exculpatory

---

[6] Although the defendant directs us to the transcript dated January 14, 2004, as the date that the court heard argument on these motions, we are unable to find any reference to these motions in that transcript. Rather, the record reveals that the court heard argument or discussion on these motions on January 5, 7 and 8, 2004, and heard additional argument on the motion to suppress on January 12, 2004.

[7] See *Giglio* v. *United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), and *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

information or anything related to an agency relationship that Marra had with the government and that it would be best to "keep the court out of the loop at this point." Both defense counsel and the state expressly agreed. The court also stated that in light of this, it did not need to act on the motion for disclosure of records at this time. Again, both defense counsel and the state expressly agreed. In relation to the motion to suppress, defense counsel stated that if nothing in the documents revealed an ongoing agency relationship between Marra and the government, then, for purposes of this case, the agency relationship began between September 4 and 18, 2002.

During further discussion on these motions on January 8, 2004, the prosecutor explained that he had obtained the department of correction documents on Marra and that he had some exculpatory material as well as other material that questionably could be disclosable. The court directed the prosecutor to turn over anything that he believed the defendant was entitled to obtain and that if after meeting with defense counsel there remained questionable documents, they should be brought to chambers so that the court could inspect them. Both defense counsel and the state agreed.

After a recess during which the state and defense counsel met, the prosecutor affirmed that he had turned over to defense counsel all documents that, even arguably, could be discoverable or related to the issue of agency. Thereafter, the defendant did not renew his request that the court conduct an in camera review of documents or argue that some documents had not been turned over or that the court needed to take any further action on his motion for disclosure of records. From our review of the record, it appears that the issue of disclosure and the necessity for an in camera inspection had been addressed fully at this time and that the court

had nothing further upon which to act related to this motion or request.

On January 12, 2002, several days after Marra's department of correction documents had been turned over to the defendant, the court heard further oral argument on the defendant's motion to suppress statements that he had made to Marra. Although the defendant argues that the court improperly denied his motion to suppress, a thorough review of the record, including the transcripts, reveals that the court did not rule on this motion. Rather, the state and defense counsel agreed on the admissibility of these statements, thereby rendering the motion moot.

During the January 12, 2002 hearing, the defendant agreed that for purposes of this case, Marra had not been acting as an agent of the government prior to September 4, 2002, and that any statements made prior to that date were admissible fully. The defendant also agreed that the statements he made to Marra after September 4, 2002, were admissible as to the attempted murder information, with one exception. The defendant did not agree that a September 9, 2002 letter written by the defendant to Marrra was admissible. The court then concluded that the parties had reached agreement on all but one of the statements sought to be suppressed, and it stated that it would make a ruling on the admissibility of that September 9, 2002 letter later in the day. Counsel did not object.

During the testimony of Nobile later that day, the state offered the September 9, 2002 letter into evidence, and defense counsel specifically stated that he had no objection. The court, sua sponte, immediately explained to the jury that it would have further instructions for it at a later time concerning how this and other letters could be treated by the jury and for what purposes they might be considered. We conclude that, the parties

having reached agreement on the admissibility of all other statements related to Marra, and the defendant having stated that he had no objection to the admission of the September 9, 2002 letter, there was no need for the court to rule on the motion to suppress, and the defendant did not argue otherwise.

In relation to both the motion for production of documents and the motion to suppress, the defendant expressly agreed to the procedures employed by the court and came to an agreement with the state on the issues referenced in these motions. He cannot, on appeal, now complain that these procedures were improper. In the present case, not only did the defendant fail to object to the court's handling of these motions but, through counsel, effectively agreed that the issues had been resolved. Defense counsel's actions may have been a tactical decision, but "[t]actical decisions . . . will not be second guessed on appeal by an appellate court or by appellate counsel." *State* v. *Ruffin*, 48 Conn. App. 504, 509–10, 710 A.2d 1381, cert. denied, 245 Conn. 910, 718 A.2d 18 (1998). When the defendant consented to the procedures, he waived his right to challenge them later on appeal. "Our procedure does not allow a defendant to pursue one course of action at trial and later, on appeal, argue that the path he rejected should now be open to him. . . . For this court to rule otherwise would result in trial by ambuscade of the trial judge." (Citations omitted.) Id., 510. It is apparent when one reads the entirety of these proceedings that the court did not avoid ruling on any motion or request properly before it. Rather, the parties made agreements that rendered rulings by the court unnecessary. As such, we conclude that the court did not act improperly.

## IV

The defendant next claims that the court improperly refused to consider the defendant's "postverdict letter"

requesting a new trial.[8] The defendant contends that the court, sua sponte, was required to treat his petition for a new trial as a motion for a new trial pursuant to Practice Book § 42-53[9] because of the court's "error in denying the defendant's motion for disclosure." The defendant also claims that the court "improperly concluded that the issue must be raised by a petition for a new trial pursuant to [General Statutes] § 52-270." We find this claim somewhat misleading and wholly without merit.

On March 8, 2004, the defendant filed a document entitled "petition for a new trial and memorandum in support," in which he expressly petitioned the court, "pursuant to § 52-270,[10] *Asherman* v. *State*, 202 Conn.

---

[8] We note that the defendant also has failed to provide a copy of this document in the appellate record. Nevertheless, there is a copy contained in the appellate clerk's file.

[9] Practice Book § 42-53, entitled "Motion for New Trial," provides: "(a) Upon motion of the defendant, the judicial authority may grant a new trial if it is required in the interests of justice. Unless the defendant's noncompliance with these rules or with other requirements of law bars his or her asserting the error, the judicial authority shall grant the motion:

"(1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or

"(2) For any other error which the defendant can establish was materially injurious to him or her.

"(b) If the trial was by the court and without a jury, the judicial authority, with the defendant's consent and instead of granting a new trial, may vacate any judgment entered, receive additional evidence, and direct the entry of a new judgment."

[10] General Statutes § 52-270 provides: "(a) The Superior Court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. The judges of the Superior Court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action.

"(b) An affidavit signed by any party or his or her attorney shall be presumptive evidence of want of actual notice."

429, 436, 521 A.2d 578 (1987) and Practice Book § 42-55,"[11] for a new trial on the basis of newly discovered evidence. This evidence consisted of a letter, purportedly sent by Marra to the trial court. The court received the letter, which was dated February 2, 2004, well after the jury had returned a guilty verdict against the defendant on January 20, 2004. The court "immediately sent that letter out to the lawyers" upon its receipt. The letter stated that Marra had manipulated and convinced the defendant to go forward with the plan to murder the victim and that the state was aware of this but did not care.

In response to this letter, defense counsel filed a petition for a new trial. The petition was not a motion for a new trial pursuant to Practice Book § 42-53, nor did it contain any allegation that the defendant was entitled to a new trial on the basis of an improper ruling made by the trial court as the defendant now attempts to argue on appeal. Rather it specifically was made on the basis of newly discovered evidence. It was not the court that characterized the document filed by the defendant as a petition for a new trial on the basis of newly discovered evidence; it was defense counsel who characterized it as such, both in the petition itself and in his statements to the court.

During the defendant's sentencing hearing on March 19, 2004, the court questioned defense counsel concerning the filing of this petition. Defense counsel responded: "I have been informed by the clerk's office . . . that the petition for a new trial is a civil matter, so it would not be filed here under the criminal docket numbers. It would be filed under a new docket number . . . and then referred." Defense counsel explained that

_____

[11] Practice Book § 42-55 provides: "A request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in accordance with General Statutes § 52-270. The judicial authority may grant the petition even though an appeal is pending."

he had filed the petition under the criminal dockets initially, but the clerk's office informed him that this was a separate civil matter. The court then specifically asked defense counsel: "Well, can I assume then that you are withdrawing—if it has been filed in this court, you are withdrawing the motion or the petition in this court?" To which defense counsel responded: "Yes." The court did not order the defendant to withdraw this petition, as the defendant argues on appeal. Defense counsel, himself, stated that he was withdrawing the petition because it had been filed improperly.

"There is a significant difference between Practice Book [§§ 42-53 and 42-54, and § 42-55]. Practice Book [§ 42-53] is concerned with motions for a new trial based on errors committed during the trial. . . . On the other hand, [§ 42-55] provides: A request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in accordance with [General Statutes § 52-270]." (Internal quotation marks omitted.) *State* v. *Legrande*, 60 Conn. App. 408, 420, 759 A.2d 1027 (2000), cert. denied, 255 Conn. 925, 767 A.2d 99 (2001). "Practice Book § 42-53 provides for the granting of a motion for a new trial in the interests of justice, for constitutional error or for other materially injurious error. A motion for a new trial under Practice Book [§ 42-53] is limited to trial errors, and cannot be based upon newly discovered evidence. . . . The defendant must bring a petition under [§ 42-55] if he wishes to seek a new trial based upon newly discovered evidence." (Internal quotation marks omitted.) *State* v. *Newton*, 59 Conn. App. 507, 511 n.3, 757 A.2d 1140, cert. denied, 254 Conn. 936, 761 A.2d 764 (2000). A petition for a new trial is instituted properly "by a writ and complaint served on the adverse party; although such an action is collateral to the action in which a new trial is sought, it is by its nature a distinct proceeding." *State* v. *Asherman*, 180 Conn. 141, 144, 429 A.2d 810 (1980).

Clearly and expressly, the defendant filed a petition for a new trial pursuant to Practice Book § 42-55 and General Statutes § 52-270, and, according to counsel at oral argument before this court, such matter still is pending in the Superior Court. Such a petition is a civil matter, properly instituted by writ of summons and complaint. Despite the defendant's argument to the contrary, the court did not improperly direct defense counsel to file a petition for a new trial rather than a motion for a new trial pursuant to Practice Book § 42-53. Clearly, counsel already had attempted to file this as a petition based on new evidence pursuant to Practice Book § 42-55 and not as a motion based on something improper having been done by the trial court pursuant to § 42-53. Defense counsel, himself, informed the court that he would be withdrawing the petition improperly filed in the criminal case and that he would be filing it in civil court, which, admittedly, he has done. The court did not induce this, as the defendant attempts to argue on appeal. For these reasons, we conclude that this claim is baseless.

The judgment is affirmed.

In this opinion the other judges concurred.